Slip-Op. 02-50

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| REINER BRACH GmbH & CO. KG<br>and<br>NOVOSTEEL SA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br>and<br><br>BETHLEHEM STEEL<br>CORPORATION and UNITED STATES<br>STEEL CORPORATION,<br><br>Defendant-Intervenors | : : : : : : : : : : : : : : : : : : : : : : | **Court No. 01-00055**<br>**BEFORE: CARMAN, CHIEF JUDGE** |

[Plaintiff's Rule 56.2 motion for judgment upon the agency record is denied.]

*Edmund Maciorowski, P.C. (Edmund Maciorowski, Pamela L. St. Peter)*, Bloomfield Hills, Michigan, for Plaintiffs.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Lucius B. Lau*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Glenn R. Butterton*, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel, for Defendant.

*Dewey Ballantine LLP (Michael H. Stein, Bradford L. Ward, Navin Joneja)*, Washington, D.C., for Defendant-Intervenors.

Date: June 4, 2002

**OPINION**

**CARMAN, CHIEF JUDGE:** Plaintiffs Reiner Brach GmbH & Co. KG ("Reiner Brach") and Novosteel SA ("Novosteel") move for judgment upon the agency record, challenging the final results of two administrative reviews of cut-to-length carbon steel plates from Germany by the United States Department of Commerce ("Commerce"). *See Certain Cut-to-Length Carbon Steel Plate From Germany: Final Results of Antidumping Duty Administrative Reviews*, 66 Fed. Reg. 3545 (Jan. 16, 2001) (*Final Results*); *see also Issues and Decision Memorandum for the Administrative Reviews of Certain Cut-to-Length Carbon Steel Plate from Germany: August 1, 1997 through July 31, 1998, and August 1, 1998 through July 31, 1999* (Jan. 16, 2001), Def. Pub. App. Ex. 2 (*Decision Memo*). In the *Final Results*, Commerce calculated a 36 percent dumping margin based on total adverse facts available. *See Final Results*, 66 Fed. Reg. at 3546; *see also Preliminary Results*, 65 Fed. Reg. at 54,207. Plaintiffs assert Commerce's decision to apply total facts otherwise available with adverse inferences and its application of a 36 percent dumping margin are not supported by substantial evidence and are not otherwise in accordance with law. Defendant United States and Defendant-Intervenors Bethlehem Steel Corporation and United States Steel Corporation ("Defendant-Intervenors") contend the application of total facts otherwise available with adverse inferences is reasonable. Plaintiffs' challenge to Commerce's determination is denied. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. 1581(c) (2000).

BACKGROUND

Reiner Brach is a German producer of cut-to-length steel plate. The merchandise at issue was purchased from Reiner Brach by the Swiss company Novosteel. *See Final Results*, 66 Fed. Reg. at 3545-46. On August 11, 1998, Commerce published a notice of opportunity to request administrative review of *Antidumping Duty Orders and Amendments to Final Determinations of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products, Certain Cold-Rolled Carbon Steel Flat Products, Certain Corrosion-resistant Carbon Steel Flat Products and Certain Cut-to-Length Carbon Steel Plate From Germany*, 58 Fed. Reg. 44170 (Aug. 19, 1993) for the period August 1, 1997 through July 31, 1998. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 63 Fed. Reg. 42,821 (Aug. 11, 1998). A similar notice was published on August 11, 1999 as to that order for the period of August 1, 1998 through July 31, 1999. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 64 Fed. Reg. 43,649 (Aug. 11, 1999). Novosteel requested administrative reviews and a scope inquiry for both periods of review. *See Final Results*, 66 Fed. Reg. at 3545. After Commerce received Novosteel's responses to its questionnaires, Defendant-Intervenors requested termination of the administrative reviews, arguing Reiner Brach, rather than Novosteel, was the appropriate respondent. *See id.* In opposition to termination of the reviews, on February 2, 2000 Reiner Brach submitted a letter to Commerce agreeing to become a respondent for the reviews. *See id.* Commerce found that "Reiner Brach not only was the producer of the subject merchandise, but also had knowledge that the products were destined for the United States, and that, thus, the sale between Reiner Brach and Novosteel was the

appropriate link in the sales chain" upon which to focus. *Id.* at 3545-46.

Commerce issued a questionnaire to Reiner Brach on February 15, 2000 directing it to:

Report all sales of the foreign like product, whether or not you consider particular merchandise to be that which is most appropriately compared to your sales of the subject merchandise. The Department will then select the appropriate comparison sales from your sales listing.

U.S. Department of Commerce, Import Administration, Administrative Review Questionnaire (Feb. 15, 2000), at B-1, Pub. Docs. 33 and 34, Def. Pub. App. Ex. 1 at B-1 (Feb. 15 Administrative Questionnaire). Additionally, Section D of the questionnaire asked for cost of production (COP) and constructed value (CV) information. It stated, "The COP and CV figures that you report in response to this section of the questionnaire should be calculated based on the actual costs incurred by your company during the period of review ("POR"), as recorded under its normal accounting system." *Id.* at D-1.

After Reiner Brach submitted its responses, Commerce sent supplemental questionnaires requesting 1) clarification of discrepancies between the total quantity of home market sales reported in Reiner Brach's responses and the quantity indicated by the sales data in its spreadsheets, and 2) clarification as to why various reported costs were the same for both periods of review. *See* U.S. Department of Commerce Supplemental Questionnaire (May 25, 2000), at 1, Pub. Doc 51, Def. Pub. App. Ex. 3 at 3; U.S. Department of Commerce Supplemental Questionnaire (July 11, 2000), at 5-8, Pub. Doc. 68, Def. Pub. App. Ex. 5 at 7-10. As to the first question, Reiner Brach responded that while the total quantity of home market sales were "based on a review of their aggregate sales data," the figures derived from the data spreadsheets were "based on individual invoices for the period of review." Reiner Brach Supplemental Questionnaire Response (June 15, 2000), at 2, Pub. Doc. 60, Def. Pub. App. Ex. 4 at 4. With

regard to the second question, Reiner Brach explained the costs "do not markedly change from year to year. The costs given are averages which reflect any slight increase or decrease in costs over the periods of review." Reiner Brach Supplemental Questionnaire Response (July 24, 2000), at 22-29, Pub. Doc. 73, Def. Pub. App. Ex. 6 at 5-12.

Commerce conducted verification of Reiner Brach's responses from August 2 through August 5, 2000. During verification Reiner Brach sought to submit previously unreported home market sales data of identical merchandise, but Commerce refused to accept the information because it constituted substantial new information and therefore was untimely. *See* Letter from the U.S. Department of Commerce to Edmund Maciorowski, PC (on behalf of Reiner Brach) (Aug. 9, 2000), at 1, Pub. Doc. 92, Def. Pub. App. Ex. 7 at 1. Commerce also discovered during verification that although the cost of production figures submitted for both periods of review were based on the same cost data, Reiner Brach could distinguish costs on a month-by-month basis yet had failed to do so despite the request for "actual" costs. (Def. Br. at 9, citing Verification Report (Aug. 21, 2000) at 11, Conf. Doc. 26.)

Commerce issued its preliminary determination on September 7, 2000. *See Certain Cut-to-Length Carbon Steel Plate From Germany: Preliminary Results of Antidumping Duty Administrative Reviews*, 65 Fed. Reg. 54,205 (Sept. 7, 2000) (*Preliminary Results*). Significantly, Commerce used the total facts otherwise available pursuant to section 776(a)(2)(A) of the Tariff Act of 1930 ("the Act"). *See Preliminary Results*, 65 Fed. Reg. at 54,207. It noted Reiner Brach's provision of information only on a minimal portion of its home market sales of the foreign like product because Reiner Brach had "interpreted [Commerce's] questionnaire to mean that Reiner Brach only had to report identical sales in the home market that matched its

U.S. sales." *Id.* Additionally, Commerce indicated that Reiner Brach had failed to provide accurate cost of production information. *See id.* Furthermore, because Reiner Brach had in its records the data that Commerce sought and was capable of providing it but failed to do so, Commerce used adverse inferences when choosing from among the facts otherwise available pursuant to section 776(b) of the Act. *See id.* Commerce decided the "all others rate" of 36 percent was appropriate because it was the highest rate applied to any company in any segment of the proceeding and was calculated during the less-than-fair-value investigation. *See id.* After receiving comments from the parties regarding the preliminary results, Commerce issued its final results on January 16, 2001, which contained no changes in its margin calculations. *Final Results,* 66 Fed. Reg. at 3545.

PARTIES' CONTENTIONS

I.      *Plaintiffs' Contentions*

Plaintiffs contend that Commerce's decision to apply total facts otherwise available with adverse inferences is not supported by substantial evidence on the record and is not otherwise in accordance with law. Plaintiffs present seven arguments to support their contention. First, Plaintiffs argue that in submitting information to Commerce, they complied with the definition of the term "foreign like product" contained in 19 U.S.C. § 1677(16) and their "fair reading" of Commerce's questionnaires. (Pl. Br. at 18.) Based on Plaintiffs' understanding of the statute and questionnaire definitions, Plaintiffs believed they were required to submit home market sales of identical merchandise only. *See id.* at 10, 18.

Second, Plaintiffs posit Commerce did not properly review Reiner Brach's questionnaire

responses and any such review would have revealed the alleged omissions. *See id.* at 19-22.

Third, Plaintiffs submit that statutory authority and case law require Commerce to give the respondent involved in the administrative review a reasonable opportunity to provide the information requested and to issue a deficiency letter when a response is not satisfactory. *See id.* at 23. Plaintiffs contend Commerce did not issue deficiency letters to allow for correction of Plaintiffs' responses or submission of omitted information. *See id.* Plaintiffs therefore allege Commerce's failure to issue deficiency letters was in error.

Fourth, Plaintiffs challenge Commerce's refusal to accept the information that Reiner Brach submitted during verification regarding home market sales of identical merchandise. *See id.* at 24. Plaintiffs observe that Commerce "routinely" allows parties to submit information during verification and its failure to do so in this case was contrary to law. *See id.* at 25.

Fifth, Plaintiffs contend Commerce improperly refused to extend the date for its final determination and to issue supplemental questionnaires to allow submission of information during verification. *See id.* at 25. Commerce noted in its *Decision Memo* that it did not issue supplemental questionnaires during verification because "such use of the Department's discretion must be reserved for truly unique circumstances, not for cases in which a party's lack of cooperation resulted in a severely deficient record." *Id.* at 27, quoting *Decision Memo*, Def. Pub. App. Ex. 2 at 5. Plaintiffs point to their various submissions of requested information to Commerce to demonstrate their cooperation, and they note that Commerce referred to this case as being "extraordinarily complicated" to show the case is unique. (Pl. Br. at 27-28.)

Sixth, Plaintiffs argue Commerce incorrectly chose to apply total facts otherwise available with adverse inferences. They assert adverse inferences are used only when there is a

refusal to provide requested information. Furthermore, Commerce had sufficient information with which to calculate normal value, and therefore total facts otherwise available should not have been used. *See id.* at 29-33.

Finally, the Plaintiffs challenge Commerce's application of the 36 percent dumping margin. They assert that the rate is unreasonable, unreliable, and irrelevant to the totality of the circumstances. *See id.* at 40. It is their claim that the 36 percent margin "bears no rational relationship to the current level of dumping in the industry." *Id.* at 42.

## II.    *Defendant's Contentions*

Defendant and Defendant-Intervenors (collectively "Defendants") assert Commerce was justified in relying upon total facts otherwise available with adverse inferences because Reiner Brach failed to provide home sales data for similar merchandise and improperly reported its cost of production data. Defendants maintain Reiner Brach possessed the requisite information and could have provided it to Commerce. Reiner Brach's failure to do so demonstrates its unwillingness to cooperate to the best of its ability. (Def. Br. at 17-19.)

Second, in response to Plaintiffs' claim that Reiner Brach properly interpreted the questionnaires to require only information regarding identical merchandise, Defendants point out that the questionnaires specifically asked for *all* sales of the foreign like product. *See id.* at 19.

Third, Defendants call attention to the fact that Commerce forwarded supplemental questionnaires to Reiner Brach inquiring about the discrepancies between its questionnaire responses and its sales data for home market sales as well as the cost of production figures. *See id.* at 21-22. Defendants argue Commerce was not able to determine that the information submitted by Reiner Brach was inaccurate until verification. *See id.* Once Commerce

determined during verification that Reiner Brach's submissions were not accurate, Defendants claim Commerce properly used its discretion in deciding not to issue further supplemental questionnaires because there would not be sufficient time to verify the information. *See id.* at 22-23, 26-28. Defendants maintain it is the obligation of the plaintiffs, not Commerce, to ensure the accuracy of the record. *See id.* at 31, quoting *Decision Memo*, Def. Pub. App. Ex. 2 at 4-5.

Fourth, Defendants rebut Plaintiffs' assertion that Commerce has developed a routine practice of accepting information during verification. Defendants distinguish the cases cited by Plaintiffs and call attention to Commerce's warning to Reiner Brach that verification is not an opportunity to submit new factual information. *See id.* at 23-25.

In response to Plaintiffs' complaint regarding Commerce's failure to extend the date for the final determination, Defendants assert Commerce would not have had time to issue a supplemental questionnaire and verify the submitted information. *See id.* at 27, quoting *Decision Memo*, Def. Pub. App. Ex. 2 at 5. Additionally, Defendants point out that extension of the time to issue a final determination is reserved for unique circumstances rather than for cases where there is a lack of cooperation. *See id.*

Sixth, Defendants state Plaintiffs' submission of "voluminous" data is irrelevant because Commerce could not use the sales or cost data to calculate dumping margins. *See id.* at 28. Defendants note that Reiner Brach only submitted a "minimal portion of its home market sales of the foreign like product,"(*id.* at 29, quoting *Decision Memo*, Def. Pub. App. Ex. 2 at 6-7), and maintain that "it is the quality of the information submitted, not the quantity that matters." (Def. Br. at 30.)

Finally, Defendants reason that Commerce properly applied the 36 percent dumping

margin because the rate "ensures that the respondent does not obtain a more favorable result because it failed to cooperate in these administrative reviews." *Id.* at 33, quoting *Decision Memo*, Def. Pub. App. Ex.2 at 8. The rate applied in this case was the "all others" rate that Commerce asserts was appropriate to use rather than the lower rates calculated for another German producer of the subject merchandise in recent years because the other German producer had cooperated with Commerce's requests for information. (Def. Br. at 35-36.) Thus Commerce argues the 36 percent rate is reliable, reasonable, and relevant as required by case law. *See id.* at 34-36.

STANDARD OF REVIEW

This Court will sustain a final determination of Commerce unless it is found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotations omitted). Commerce's decision will be upheld "if it is reasonable and supported by the record as a whole, including whatever fairly detracts from the substantiality of the evidence." *Novosteel SA v. United States*, 128 F. Supp. 2d 720, 725 (Ct. Int'l Trade 2001) (internal quote omitted). Commerce's decision is in accordance with law when "the agency's actions were reasonable under the terms of the relevant statute." *Shakesproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 102 F. Supp. 2d 486, 489 (Ct. Int'l Trade 2000). In addition, "[s]ubstantial deference is granted to the agency in both its interpretation of its statutory mandate and the methods it employs in administering the

antidumping law." *North Star Steel Ohio, a Div. of N. Star Steel Co. v. United States*, 824 F.

Supp. 1074, 1077 (Ct. Int'l Trade 1993) (internal quotations omitted).

ANALYSIS

I.    *The Department of Commerce's application of total facts otherwise available is
      supported by substantial evidence on the record and is otherwise in accordance with law.*

Congress has given Commerce statutory authority to use facts otherwise available in

reaching administrative decisions if:

(1) necessary information is not available on the record, or

(2) an interested party or any other person-

> (A) withholds information that has been requested by the administering authority
> or the Commission under this subtitle,
>
> (B) fails to provide such information by the deadlines for submission of the
> information or in the form and manner requested, . . .
>
> (C) significantly impedes a proceeding under this subtitle, or
>
> (D) provides such information but the information cannot be verified. . . .

19 U.S.C. § 1677e(a) (2000).

Commerce's ability to use facts otherwise available pursuant to 19 U.S.C. §

1677e(a)(2)(B) is subject to its compliance with § 1677m(c)(1), (d) and (e).  Commerce is

required to corroborate any secondary information it will rely upon rather than relying upon

information obtained during the review.  *See* § 1677e(c).  As summarized in

*Mannesmannrohren-Werke AG v. United States*, 77 F. Supp. 2d 1302, 1313 (Ct. Int'l Trade

1999), "before Commerce may use facts available, 19 U.S.C. § 1677m(d) . . . requires that

Commerce give a party an opportunity to remedy or explain deficiencies in its submission. If the remedy or explanation provided by the party is found to be 'not satisfactory' or untimely, the information may be disregarded in favor of facts available, subject to the five part test in Subsection (e)." In the present case, Commerce applied facts otherwise available based on its determination that Reiner Brach withheld sales information requested and failed to provide cost information in the requested form. *See Decision Memo*, Def. Pub. App. Ex. 2 at 6. Based on the reasons that follow, the Court sustains Commerce's decision.

### A. *Submission of home market sales data*

The Court finds Commerce sufficiently notified Reiner Brach that it was to submit home market sales data for both identical and similar merchandise. Commerce's use of facts otherwise available is justified because Reiner Brach failed to provide information regarding sales of similar merchandise and omitted certain sales of identical merchandise.

Commerce indicated to Reiner Brach in its initial questionnaire dated February 15, 2000 that *all* sales of the foreign like product were to be reported. *See* Feb. 15 Administrative Questionnaire, at B-1, Pub. Docs. 33 and 34, Def. Pub. App. Ex. 1 at B-1. In Appendix I of the February 15, 2000 questionnaire, Commerce defined "foreign like product" as "merchandise that is sold in the foreign market and that is identical or similar to the subject merchandise." *Id.* at I-7, Def. Pub. App. Ex.1 at I-7. In light of Commerce's request for "all" home market sales data for "identical or similar merchandise," it is apparent Commerce had requested data for sales of all merchandise that fell under either the "identical" category or the "similar" category, not just one category. With regard to the term "identical merchandise," Commerce provided, "Identical

merchandise is the *preferred* category of foreign like product for purposes of the comparison with subject merchandise. The identical merchandise is merchandise that is produced by the same manufacturer in the same country as the subject merchandise, and *which the Department determines* is identical or virtually identical in all physical characteristics with the subject merchandise, as imported into the United States." *Id.* at I-8, Def. Pub. App. Ex. 1 at I-8 (emphasis added). In addition, Commerce made clear it would decide, based upon the information submitted, whether there were any sales of identical foreign like product and what constituted "similar merchandise." As to "similar merchandise," Commerce explained: "In deciding which sales of the foreign like product to compare to sales of the subject merchandise, the Department first seeks to compare sales of identical merchandise. If there are no sales of the identical foreign like product, the Department will compare sales of the foreign like product similar to the subject merchandise." *Id.* at I-11, Def. Pub. App. Ex. 1 at I-11.

In its initial response, Reiner Brach provided only information regarding what *it* considered to be identical merchandise sold in the home market. Reiner Brach relies upon its interpretation of the questionnaire language and the statute defining "foreign like product" to maintain that it reasonably believed it was obligated to report only information regarding sales of identical merchandise.[1] Despite Plaintiffs' argument, it is clear that Reiner Brach was obligated

---

[1] "Foreign like product" is defined in 19 U.S.C. § 1677(16) as:
merchandise in the first of the following categories in respect of which a determination for purposes of part II of this subtitle can be satisfactorily made:
> (A) The subject merchandise and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.
> (B) Merchandise -
>> (i) produced in the same country and by the same person as the subject merchandise,

to provide information regarding both identical merchandise and similar merchandise from Commerce's 1) request for "all" sales of the foreign like product, 2) definition of foreign like product as "identical or similar merchandise," and 3) indication that Commerce will determine itself which sales are appropriate for comparison purposes from those reported, as seen in the definition of identical merchandise as that merchandise *which Commerce determines* is identical. Commerce did not give Reiner Brach discretion to determine which were the proper sales for comparison purposes. Thus Reiner Brach had the obligation to submit information regarding home market sales of both identical merchandise *and* similar merchandise. *See Allegheny Ludlum Corp. v. United States*, Consol. Ct. No. 99-06-00369, 2000 Ct. Int'l Trade LEXIS 176, at *49 (Ct. Int'l Trade Dec. 28, 2000) ("In response to this inquiry into home market sales, a defined term that is one of the central issues in any dumping investigation, [the respondent] had a statutory obligation to prepare an accurate and complete record in response to questions plainly asked by Commerce.").

Reiner Brach further argues that Commerce failed to inform it that its response to the initial questionnaire was deficient as required by statute. The facts available statute states Commerce's use of facts otherwise available is subject to 19 U.S.C. § 1677m(d), which reads,

---

                (ii) like that merchandise in component material or materials and in the purposes for which used, and
                (iii) approximately equal in commercial value to that merchandise.
          (C) Merchandise -
                (i) produced in the same country and by the same person and of the same general class or kind as the subject merchandise,
                (ii) like that merchandise in the purposes for which used, and
                (iii) which the administrative authority determines may reasonably be compared with that merchandise.
19 U.S.C. § 1677(16).

"[i]f the administering authority . . . determines that a response to a request for information under this subtitle does not comply with the request, the administering authority . . . shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle."

The Court finds Commerce complied with the requirements of § 1677m(d). First, in the present case, the initial questionnaire was clear as to the information requested. Commerce asked for "all" home market sales of the foreign like product and made clear that "foreign like product" consisted of "identical or similar merchandise." Second, Commerce raised the discrepancies it noticed in the supplemental questionnaire and gave Reiner Brach an opportunity to explain the discrepancies. In its May 25, 2000 supplemental questionnaire, Commerce stated, "According to your Section A response, total quantity for Home Market sales sold is [***] kilograms and the total value is $ [***]. However, your sales data indicates that total quantity for Home Market sales is [***] MT or ([***] kg) and total sales value is $ [***]. Please explain these discrepancies." (Def. Pub. App. Ex. 3 at 3). Third, the response given by Reiner Brach to the supplemental questionnaire was so vague that Commerce did not have notice or reason to believe a deficiency existed. Commerce could not have known that there was a deficiency remaining in that Reiner Brach had not submitted all of its home market sales data as requested by Commerce. *See Tung Mung Dev. Co., Ltd.*, 2001 Ct. Intl. Trade LEXIS 94, at *97. Reiner Brach provided the following answer to the supplemental questionnaire on June 15, 2000, "The quantity and value figures given in Reiner Brach's Section A response were based on a review of their aggregate sales data. The quantity and value figures derived from the data spreadsheets are

based on individual invoices for the period of review." (Def. App. Ex. 4 at 4).

Commerce maintains, based on the responses provided by Reiner Brach in the questionnaire and supplemental questionnaire, it could not have determined that the information provided was erroneous until verification. (Def. Br. at 21, citing *Decision Memo*, Def. Pub. App. Ex. 2 at 4). Reiner Brach, on the other hand, asserts the missing information was evident and if Commerce sought both identical and similar merchandise data, it had the obligation to inform Reiner Brach of any deficiency. Reiner Brach cites *Bowe-Passat v. United States*, 17 CIT 335 (1993) and *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 23 CIT 804 (1999) to support its argument, yet both cases are distinguishable. In *Ta Chen*, the information allegedly missing was never specifically requested in the original questionnaire or in the supplemental questionnaires. *See Ta Chen*, 23 CIT at 818-19. The reasoning of the court in *Ta Chen* is grounded in the fact that Commerce did not ask for the specific information in the initial questionnaire and then failed to ask for it in the supplemental questionnaires, thereby clearly violating 19 U.S.C. § 1677m. *See id.* at 818-20. In the present case, however, Commerce requested the specific information it sought in the initial and supplemental questionnaires. *See Tung Mung Dev. Co., Ltd. v. United States*, Consol. Ct. No. 99-07-00457, 2001 Ct. Intl. Trade LEXIS 94, at *95-96 (Ct. Int'l Trade July 3, 2001) (distinguishing *Ta Chen* based on the fact that in *Ta Chen* Commerce had not specifically asked for the information it later claimed was missing).

In *Bowe-Passat*, the court stated, "In the case at bar, the ITA would have this Court endorse an investigation where the ITA sent out a general questionnaire and a brief deficiency letter, then effectively retreated into its bureaucratic shell, poised to penalize Bowe for deficiencies not specified in the letter that the ITA would only disclose after it was too late, *i.e.,*

after the preliminary determination. This predatory 'gotcha' policy does not promote cooperation or accuracy or reasonable disclosure by cooperating parties intended to result in realistic dumping determinations." *Id.* at 343. First, *Bowe-Passat* was decided prior to the enactment of the Uruguay Round Agreements Act in 1994 which governs the present case. Second, it is apparent in *Bowe-Passat* that Commerce was aware of the deficiency at the time it issued the deficiency letter but failed to adequately address the deficiency and to inform Bowe that further information was required. In the present case, however, Commerce states that it was unaware of the deficiency and, based on Reiner Brach's supplemental questionnaire response, could not have known of it until verification. As discussed, the initial questionnaire was clear as to the information requested. In the supplemental questionnaire, Commerce asked about the discrepancies it did notice and gave Reiner Brach an opportunity to explain the discrepancies. Third, in *Bowe-Passat*, the court found that Bowe submitted information in response to the deficiency letter in a timely manner and was prepared to submit the information Commerce later claimed was missing if Commerce had informed Bowe of the deficiency. In the present case, the response given by Reiner Brach to the supplemental questionnaire was so vague that Commerce did not have notice or reason to believe a deficiency existed. It is the interested party's obligation to create an accurate record and provide Commerce with the information requested to ensure an accurate dumping margin. *See Sanyo Elec. Co., Ltd. v. United States*, 9 F. Supp. 2d 688, 697 (Ct. Int'l Trade 1998); *RHP Bearings v. United States*, 875 F. Supp. 854, 857 (Ct. Int'l Trade 1995).

The Court finds Reiner Brach's failure to provide all information regarding home market sales of identical merchandise justifies Commerce's decision to apply facts otherwise available.

*See* 19 U.S.C. § 1677e(a)(2)(A) and (B); *see also Fabrique de Fer de Charleroi S.A. v. United States*, 155 F. Supp. 2d 801, 807-08 (Ct. Int'l Trade 2001).  During verification, in letters dated August 2, 7, and 8, 2000, Reiner Brach sought to submit information regarding home market sales of identical merchandise which it had previously "inadvertently omitted."  *See* Letter from Edmund Maciorowski, PC (on behalf of Reiner Brach) to the U.S. Department of Commerce (Aug. 2, 2000), at 1, Pl. Pub. App. 6 Ex. 19 at 1; Letter from Edmund Maciorowski, PC (on behalf of Reiner Brach) to the U.S. Department of Commerce  (Aug. 8, 2000), Pl. Pub. App. 6 Ex. 21; Letter from the U.S. Department of Commerce to Edmund Maciorowski, PC (on behalf of Reiner Brach)  (Aug. 9, 2000), at 1, Pub. Doc. 92, Def. Pub. App. Ex. 7 at 1.  Commerce rejected the submission as "new factual information" and therefore "untimely" submitted.  Letter from the U.S. Department of Commerce to Edmund Maciorowski, PC (on behalf of Reiner Brach)  (Aug. 9, 2000), at 1, Pub. Doc. 92, Def. Pub. App. Ex. 7 at 1.  Plaintiffs claim Commerce has routinely allowed for submission of information during verification and its refusal to do so in these circumstances was contrary to law.  (Pl. Br. at 25.)  The Court holds Commerce's decision to reject the information in question is supported by substantial evidence and is otherwise in accordance with law.

According to Commerce's regulations, for the final results of an administrative review, a submission of factual information is due no later than 140 days after the last day of the anniversary month.  *See* 19 C.F.R. § 351.301(b)(2)(1999).  The anniversary month is "the calendar month in which the anniversary of the date of publication of an order . . .  occurs."  § 351.102 (b).  This court has previously held that Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of

time limits, and it has found Commerce's policy of setting time limits to be reasonable because Commerce "clearly cannot complete its work unless it is able at some point to 'freeze' the record and make calculations and findings based on that fixed and certain body of information." *Coalition for the Pres. of Am. Brake Drum and Rotor Aftermarket Mfrs. v. United States*, 44 F. Supp. 2d 229, 237, 239 (Ct. Int'l Trade 1999) (citations omitted). Commerce had informed Reiner Brach it would not accept "substantial revisions" during verification; it would accept new information only when "(1) the need for that information was not evident previously; (2) the information makes minor corrections to information already on the record; or (3) the information corroborates, supports, or clarifies information already on the record." Letter from the U.S. Department of Commerce to Edmund Maciorowski, PC (on behalf of Reiner Brach) (July 18, 2000), at 2, Pub. Doc. 82, Def. Intervenor Pub.App. Ex. 25 at 2; Letter from the U.S. Department of Commerce to Edmund Maciorowski, PC (on behalf of Reiner Brach) (July 18, 2000), at 2, Pub. Doc. 83, Def. Intervenor Pub. App. Ex. 26 at 2. This instruction is consistent with Commerce's practice of accepting information during verification where the information relates to minor adjustments to or corroboration or clarification of information already on the record. *See, e.g., Acciai Speciali Terni S.P.A. v. United States*, 142 F. Supp. 2d 969, 1007 (Ct. Int'l Trade 2001); *Coalition for Pres. of Am. Brake Drum and Rotor Aftermarket Mfrs.*, 44 F. Supp. 2d at 235-36. This Court has also upheld Commerce's discretion to reject substantial new factual information submitted after the deadline for submission of such information. *See, e.g., Bergerac, N.C. v. United States*, 102 F. Supp. 2d 497, 503-04 (Ct. Int'l Trade 2000). Commerce determined that even if it were to grant Reiner Brach's request to extend the deadline for the final determination by 60 days and issue supplemental questionnaires to allow submission of the

omitted information, "[t]he additional sixty days would not provide sufficient time to review and analyze the data." *Decision Memo*, Def. Pub. App. Ex. 2 at 5.

This Court finds Commerce's rejection of the information submitted during verification to be reasonable in view of: 1) Commerce's discretion in administering and enforcing the applicable statutes and regulations, 2) the clarity of its questionnaires, 3) its inability to discern the omission of information until verification, and 4) its warning that new information would generally not be accepted during verification. Additionally, Commerce's decision to apply fact otherwise available due to Reiner Brach's failure to provide the requested information was appropriate under the circumstances.

C.      *Submission of cost of production information*

This Court finds Commerce acted reasonably in applying facts otherwise available due to Reiner Brach's failure to provide the cost of production information in the manner and form requested. As noted earlier, Reiner Brach was asked to submit cost of production information calculated based on the actual costs it incurred during each period of review. Commerce issued a supplemental questionnaire dated July 11, 2000 in which it asked Reiner Brach why various costs were the same for both periods of review. *See* U.S. Department of Commerce Supplemental Questionnaire (July 11, 2000), at 5-8, Pub. Doc. 68, Def. Pub. App. Ex. 5 at 7-10. The answer given to each of Commerce's questions was that the various costs figures "do not markedly change from year to year. The costs given are averages which reflect any slight increase or decrease in costs over the periods of review." Reiner Brach Supplemental Questionnaire Response (July 24, 2000), at 22-29, Pub. Doc. 73, Def. Pub. App. Ex. 6 at 5-12. Commerce found Reiner Brach had not submitted the cost of production information in the form and manner

requested, making it appropriate for Commerce to apply facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2)(B).[2] In the *Decision Memo*, Commerce noted Reiner Brach company officials' statements that the company had the ability to provide its costs for each period of review. Additionally, at verification a company official stated that Reiner Brach's reported input materials costs changed between the periods of review and "Reiner Brach could distinguish costs on a month-by-month basis." *Decision Memo*, Def. Pub. App. Ex. 2 at 4, quoting Verification Report (Aug. 21, 2000) at 11, Conf. Doc. 26.

As noted earlier, Commerce's ability to use facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2)(B) is subject to its compliance with § 1677m(c)(1), (d) and (e). Plaintiffs argue Commerce failed to provide a deficiency letter to Reiner Brach in accordance with § 1677m(d) to notify Reiner Brach of deficiencies in its cost of production information. Commerce issued a supplemental questionnaire specifically requesting information as to why the cost of production figures were reported as averages. Defendants assert Commerce could not determine the information submitted was inaccurate and incomplete until verification. According to Defendants, Commerce believed it did have the proper information in light of Reiner Brach's response to the supplemental questionnaire that there were not marked changes in costs during the periods of review; it was not until verification, when company officials indicated

---

[2] In the *Decision Memo*, Commerce noted the following explanation given by Reiner Brach during verification as to why it did not provide the cost data for each period of review: "(1) cost data for 1999 were available, but the company did not have the personnel available to gather the data and allocate the costs to each cost center; (2) cost data for 1997 were available, but Reiner Brach did not review its records because the data was not of interest to Reiner Brach; and (3) Reiner Brach did not use July 1999 costs because many of its employees were on vacation and July's costs would not have been representative of a normal production month." *Decision Memo*, Def. Pub. App. Ex. 2 at 4.

varying costs and Reiner Brach's ability to report them, that Commerce was aware of the deficiency. Thus this Court finds Commerce complied with § 1677m(d).

Commerce's use of facts otherwise available is also subject to § 1677m(e), which provides that Commerce "shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by" Commerce if:

(1)     the information is submitted by the deadline established for its submission,

(2)     the information can be verified,

(3)     the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,

(4)     the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by [Commerce], and

(5)     the information can be used without undue difficulties.

19 U.S.C. § 1677m(e). In the present case, the condition set forth in § 1677m(e)(4) has not been met. Reiner Brach had actual cost information that could have been reported on a month-by-month basis but failed to provide such information despite Commerce's clear indication in its initial questionnaire that it sought actual costs and its supplemental questionnaire asking why actual costs were not reported. Such failure demonstrates that Reiner Brach did not act to the best of its ability in providing the requested information. Commerce is required to calculate antidumping duty margins as accurately as possible, making it "essential that a respondent provide Commerce with accurate, credible and verifiable information." *Gourmet Equip. (Taiwan) Corp. v. United States*, No. 99-05-00262, 2000 Ct. Intl. Trade LEXIS 82, at *6-7 (Ct. Int'l Trade July 6, 2000). In striving to obtain accurate and complete information, Commerce has

discretion to determine if it is imposing an unreasonable burden by requiring that the information

be submitted in a particular form. *See Fabrique de Fer de Charleroi S.A.*, 155 F. Supp. 2d at

808. This Court finds Commerce was not required to use the cost of production information

submitted by Reiner Brach pursuant to § 1677m(e) .


II.      *The Department of Commerce's decision to use adverse inferences is supported by
         substantial evidence and was otherwise in accordance with law.*

         Once Commerce has determined that it will apply facts otherwise available under 19

U.S.C. § 1677e(a), it may decide to draw adverse inferences in selecting from among the facts

otherwise available pursuant to § 1677e(b). *See Branco Peres Citrus, S.A. v. United States*, 173

F. Supp. 2d 1363, 1371 (Ct. Int'l Trade 2001). In order to apply adverse inference though,

Commerce must first find "that an interested party has failed to cooperate by not acting to the

best of its ability to comply with a request for information" from Commerce. §1677e(b). In the

present case, Commerce determined in the *Final Results* that Reiner Brach did not cooperate to

the best of its ability in reporting home market sales data and cost of production figures. *See*

*Decision Memo*, Def. Pub. App. Ex. 2 at 8.

         According to the Statement of Administrative Action ("SAA"), H.R. REP. NO. 103-316

(1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199, "[w]here a party has not cooperated,

Commerce and the Commission may employ adverse inferences about the missing information to

ensure that the party does not obtain a more favorable result by failing to cooperate than if it had

cooperated fully. In employing adverse inferences, one factor the agencies will consider is the

extent to which the party may benefit from its own lack of cooperation." Commerce's finding

that the respondent failed to cooperate "must be reached by 'reasoned decisionmaking,' including

. . . a reasoned explanation supported by a stated connection between the facts found and the choice made." *Steel Auth. of India, Ltd. v. United States*, 149 F. Supp. 2d 921, 929 (Ct. Int'l Trade 2001) (citations omitted); *see also Mannesmannrohren-Werke AG*, 77 F. Supp. 2d at 1313-14 (noting that "Commerce needs to articulate why it concluded that a party failed to act to the best of its ability, and explain why the absence of this information is of significance to the progress of its investigation."). The Court in *Steel Authority of India* made clear that "[Commerce] cannot merely recite the relevant standard or repeat its facts available finding. Rather, in order to satisfy its statutory obligations, [Commerce] must be explicit in its reason for applying adverse inferences." *Steel Auth. of India, Ltd.*, 149 F. Supp. 2d at 930 (internal citations omitted). Further, where the interested party has not submitted accurate and complete information but does have the ability to comply with Commerce's request, Commerce must demonstrate "a willfulness on the part of the respondent or behavior below the standard of a reasonable respondent in order to apply adverse inferences." *Id.* at 930 n.11 (citing *Nippon Steel Corp. v. United States*, 118 F. Supp. 2d 1366, 1378-79 (2000)); *see also Nippon Steel Corp. v. United States*, 146 F. Supp. 2d 835, 840 (Ct. Int'l Trade 2001) (stating that in cases where the omission is due to inadvertence, "the simple fact of a respondent's failure to report information within its control does not warrant an adverse inference.").[3]

In the present case, Commerce properly made the additional finding required to apply adverse inferences. In the *Preliminary Results*, from which the *Final Results* did not differ and to which no changes were made, Commerce outlined Reiner Brach's failure to provide the

---

[3] In cases where the interested party claims an inability to comply with Commerce's request, Commerce must minimally find that the party had the ability to comply but did not do so. *See Steel Auth. of India, Ltd.* 149 F. Supp. 2d at 930.

requested home market sales data and cost of production figures as its basis for using total facts

available. *See Preliminary Results*, 65 Fed. Reg. at 54,207; *see also Final Results*, 66 Fed. Reg.

at 3546. It then indicated that "Reiner Brach acknowledged that it had the requested data in its

records and was capable of providing it to [Commerce], but nevertheless failed to provide a

complete response to the Department's questionnaire. Thus, we find that Reiner Brach failed to

cooperate by not acting to the best of its ability with respect to its home market sales and cost

data." *Preliminary Results*, 65 Fed. Reg. at 54,207. As to the cost of production figures, in the

*Decision Memo*, Commerce explained that a Reiner Brach official stated in verification that the

cost of production changed between the two periods of review, and the company could

distinguish costs on a month-by-month basis. *See Decision Memo*, Def. Pub. App. Ex. 2 at 4.

Commerce determined it did not have the required information "to conduct an accurate sales-

below-cost test for each review which would allow [Commerce] to choose the correct above the

cost of production home market sales for comparison with Reiner Brach's U.S. sales." *Id.*

To determine whether a respondent has cooperated to the best of its ability, Commerce

may make justifiable inferences based on the record before it. *See Asociacion Colombiana de*

*Exportadores de Flores v. United States*, 40 F. Supp. 2d 466, 472 (Ct. Int'l Trade 1999). This

Court has acknowledged that "Commerce must necessarily draw some inferences from a pattern

of behavior." *Borden, Inc. v. United States*, No. 96-08-01970, 1998 WL 895890, at *1 (Ct. Int'l

Trade Dec. 16, 1998); *see also Nippon Steel Corp.*, 146 F. Supp. 2d at 840; *Mannesmannrohren-*

*Werke AG*, 120 F. Supp. 2d at 1082-1087; *see, e.g., Mannesmannrohren-Werke AG*, 77 F. Supp.

2d at 1317. The facts of the case at hand demonstrate a pattern of behavior which makes

Commerce's decision to use adverse inferences reasonable. Reiner Brach failed to provide

information regarding home market sales of similar merchandise despite the clear language of the

questionnaire asking for information on "all sales" of the foreign like product in the home

market. It based its decision not to submit such information on the assumption that it only had to

submit information regarding home market sales of identical merchandise, but it never asked

Commerce to clarify whether its assumption was correct even in light of Commerce's

supplemental questionnaire raising concerns regarding the submitted information. It then failed

to provide all of its information regarding home market sales of the identical merchandise and

did not seek to submit the information until verification, at which time Commerce would not

have sufficient opportunity to review and verify the information. Further, it failed to provide

Commerce with the actual costs of production for each period of review as requested in plain

terms by Commerce, despite the fact that the information was available to Reiner Brach and

Commerce gave it the opportunity to submit the information in a supplemental questionnaire. In

each of the supplemental questionnaires, Reiner Brach supplied vague answers from which

Commerce was not able to ascertain the nature or extent of the deficiencies until verification.

This cumulative evidence justifies Commerce's finding that Reiner Brach failed to cooperate to

the best of its ability, and therefore Commerce's decision to apply adverse inferences is

supported by substantial evidence and is otherwise in accordance with law.


III.    *The Department of Commerce's decision to apply the 36 percent dumping margin is
        supported by substantial evidence and is otherwise in accordance with law.*

        Plaintiffs argue that even if Commerce properly chose to apply total facts otherwise

available with adverse inferences, its choice of a 36 percent dumping margin is not supported by

substantial evidence and is not otherwise in accordance with law.  Plaintiffs state, "There is nothing in [Commerce's] determination that will support a 36% dumping margin as a reasonably accurate estimate of Respondent's actual rate, even with a built-in increase intended as a deterrent for non-compliance."  (Pl. Br. at 41.)  Plaintiffs posit the rate is outdated since it was calculated in a less than fair value investigation eight years ago.  Additionally, Plaintiffs state the margin is not rationally related to Reiner Brach's activities because the margin had been based on sales by another German corporation, AG der Dillinger Hutterwerke ("Dillinger"), with greater manufacturing capabilities as well as a different product line and different annual sales revenue.  Plaintiffs submit that the margin is not relevant because it is not rationally related to the current level of dumping in the industry.  (Pl. Br. at 40-43.)

Defendants support Commerce's use of the 36 percent dumping margin by noting that the rate is not outdated, is the current all others rate, and is the rate presently applicable to exports by Plaintiffs as well as being the all others rate.  Its use serves as a means of providing an incentive for a respondent to cooperate in administrative reviews, and the Court of Appeals for the Federal Circuit has acknowledged Commerce's discretion, albeit not unbounded, in choosing sources and facts upon which to rely where a respondent has been uncooperative.  *See F.lii De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).  The rate has not been discredited since the less than fair value investigation.  Defendants also assert that it was more appropriate to use the 36 percent margin rather than lower rates calculated in subsequent reviews of Dillinger because Dillinger had cooperated with Commerce's requests for information while Reiner Brach had not.  Defendants assert Commerce complied with the requirement of 19 U.S.C. § 1677e(c) that "[w]hen [Commerce] . . . relies on secondary

information rather than on information obtained in the course of an investigation or review, [Commerce] . . . shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal." The rate came from a less than fair value investigation of Dillinger and "there was no evidence on the record indicating that the business practices of Reiner Brach differ significantly from those of other members of the German steel industry." (Def. Br. at 36.)

As noted, Commerce must corroborate secondary information used in an administrative review. *See* 19 U.S.C. § 1677e(c). The SAA states "[c]orroborate means that the agencies will satisfy themselves that the secondary information to be used has probative value." SAA, 1994 U.S.C.C.A.N. at 4199. This Court has posited that "[i]n order to comply with the statute and the SAA's statement that corroborated information is probative information, Commerce must assure itself that the margin it applies is relevant, and not outdated, or lacking a rational relationship to [Respondent]." *Ferro Union, Inc. v. United States*, 44 F. Supp. 2d 1310, 1335 (Ct. Int'l Trade 1999). Commerce has broad, but not unrestricted, discretion in determining what would be an accurate and reasonable dumping margin where a respondent has been found to be uncooperative. *See F. lii De Cecco di Filippo Fara S. Martino S.p.A.*, 216 F.3d at 1032 ("Particularly in the case of an uncooperative respondent, Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a reasonable margin. Commerce's discretion in these matters, however, is not unbounded."). It cannot impose "punitive, aberrational, or uncorroborated margins." *Id.*

Generally margins have been invalidated where the margin also did not bear a rational

relationship to the interested party, had been discredited, or other margins were available.  *See*

*Kompass Food Trading Int'l, etal.  v. United States,* No. 98-09-02848, 2000 Ct. Intl. Trade

LEXIS 92, at \*16 n.6 (Ct. Int'l Trade July 31, 2000); *see also F.lii De Cecco di Filippo Fara S.*

*Martino S.p.A.*, 216 F.3d at 1032-34; *Am. Silicon Techs. v. United States*, 110 F. Supp. 2d 992,

1003-04 (Ct. Int'l Trade 2000).  In *Kompass Food Trading International*, this Court stated that

the fact that a margin was three years old, where it was otherwise rational and relevant, was an

insufficient basis to invalidate the margin.  *See Kompass Food Trading Int'l*, 2000 Ct. Intl. Trade

LEXIS 92, at \*16 n.6.  Even in a case where an eight year old margin was invalidated, the reason

for the invalidation was because the margin bore no rational relationship to the respondent and

not because it was outdated.  *See id.*  The rate applied by Commerce in this case is the "all

others" rate that currently applies to Plaintiffs and has not been discredited to date.  Commerce

was not required to select the rate determined for Dillinger in recent years because Dillinger,

unlike Reiner Brach, has cooperated by properly responding to Commerce's requests for

information.  "Here, it is clear, moreover, that the statute has no requirement that Commerce is

limited to the highest rate imposed on a cooperating company when selecting a rate for a non-

cooperating respondent."  *F.lii De Cecco di Filippo Fara S. Martino S.p.A.*, 216 F.3d at 1032.

The margin selected serves to induce cooperation by respondents in administrative reviews

without being "punitive, aberrational or uncorroborated."  Therefore this Court holds that the use

of the 36 percent dumping margin is supported by substantial evidence and is otherwise in

accordance with law.

## CONCLUSION

This Court finds that Commerce's use of total facts otherwise available with adverse inferences and its use of the 36 percent dumping margin are supported by substantial evidence and is otherwise in accordance with law.  Therefore the *Final Results* is affirmed in its entirety.

_____
Gregory W. Carman
Chief Judge

Dated: June 4, 2002
New York, New York