Slip Op. 02 - 123

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

---

|  |  |
|---|---|
| AMERICAN SILICON TECHNOLOGIES, ELKEM METALS COMPANY and GLOBE METALLURGICAL INC. | : : : : |
| Plaintiffs, | : : |
| v. | : **PUBLIC VERSION** : |
| UNITED STATES, | : : |
| Defendant, | : : |
| and | : : |
| LIGAS DE ALUMINIO S.A. | : : |
| Defendant-Intervenor. | : : |
|  | : **Before: MUSGRAVE, JUDGE** |
|  | : : Consolidated Court No. 99-03-00149 |
| ELETROSILEX S.A., | : : |
| Plaintiff, | : : |
| v. | : : |
| UNITED STATES | : : |
| Defendant, | : : |
| and | : : |
| AMERICAN SILICON TECHNOLOGIES, ELKEM METALS COMPANY and GLOBE METALLURGICAL INC. | : : : : |
| Defendant-Intervenors. | : : |

---

[Plaintiff Eletrosilex, S.A. contests the Department of Commerce's determination, on remand from this Court, that: (1) Eletrosilex failed to act to the best of its ability by not responding to supplemental antidumping questionnaires from Commerce; (2) it was necessary to use total facts

available since the information Eletrosilex submitted was too incomplete in key areas; and (3) the 93.20 percent surrogate margin applied to Eletrosilex was relevant and reliable. The Court sustains Commerce's finding that Eletrosilex failed to act to the best of its ability and its conclusion that it was necessary to resort to total facts available, but holds that the 93.20 percent surrogate margin selected by Commerce lacks a rational relationship to Eletrosilex, as required by 19 U.S.C. § 1677e(c) and *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000). Therefore the Court remands this matter to Commerce a second time for it to select a margin that is "a reasonably accurate estimate of the respondent's actual rate, albeit with some built in increase intended as a deterrent to non-compliance." 216 F.3d at 1032.]

Dated: October 17, 2002

*Baker Botts*, LLP (*Kirk K. Van Tine*, *Samuel J. Waldon*, and *Matthew T. West*) for plaintiffs and defendant-intervenors American Silicon Technologies, Elkem Metals Company, and Globe Metallurgical Inc.

*Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Reginald T. Blades, Jr.*), and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Michele D. Lynch*), of counsel, for defendant.

*Dorsey & Whitney*, LLP (*Philippe M. Bruno* and *Rosa S. Jeong*) for plaintiff and defendant-intervenor Eletrosilex, S.A.

**OPINION**

In this action plaintiff Eletrosilex S.A., a Brazilian producer of silicon metal, challenges the decision by the International Trade Administration of the United States Department of Commerce ("Commerce" or "the agency") to use total adverse facts available to determine its dumping margin in the sixth administrative review of the antidumping duty order on silicon metal from Brazil, *Silicon Metal From Brazil: Final Results of Antidumping Duty Administrative Review*, 64 Fed. Reg. 6305 (Feb. 9, 1999). Previously, the Court remanded this determination for Commerce to (1) reconsider

whether Eletrosilex failed to respond to the best of its ability, (2) reconsider whether it was appropriate to resort to total, as opposed to partial, facts available, and (3) explain the relevance and reliability of the total facts available margin it applied to Eletrosilex, if it concluded that it was still necessary to use total facts available. *See American Silicon Technologies v. United States*, 24 CIT__, __, 110 F. Supp. 2d 992, 1003-04 (2000). Commerce issued *Silicon Metal From Brazil; Final Results of Redetermination Pursuant to Court Remand* (*"Remand Results"*) on January 29, 2001. In the *Remand Results* Commerce reached the same conclusions it reached in the final results of the administrative review, namely, that: (1) Eletrosilex failed to act to the best of its ability by not responding to supplemental antidumping questionnaires from Commerce; (2) it was necessary to use total facts available since the information Eletrosilex submitted was too incomplete in key areas; and (3) the 93.20 percent surrogate margin applied to Eletrosilex was relevant and reliable. *See Remand Results* at 8, 10-12, 14-15.

Eletrosilex submitted comments objecting to the *Remand Results* and Commerce and defendant-intervenors American Silicon Technologies, Elkem Metals Co., and Globe Metallurgical Inc. (collectively "American Silicon") submitted rebuttal comments. Oral argument was held on the issues raised in the comments, after which the parties submitted supplemental briefs. For the reasons set forth below, the Court sustains Commerce's finding that Eletrosilex failed to act to the best of its ability and its conclusion that it was necessary to resort to total facts available. Nevertheless, the Court holds that the 93.20 percent surrogate margin selected by Commerce lacks a rational relationship to Eletrosilex, as required by 19 U.S.C. § 1677e(c) and *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000). Therefore the Court remands this

matter to Commerce a second time for it to select a margin that is "a reasonably accurate estimate of the respondent's actual rate, albeit with some built in increase intended as a deterrent to non-compliance." 216 F.3d at 1032.

*Background*

On September 22, 1997 Commerce sent Eletrosilex an initial antidumping questionnaire, and after analyzing Eletrosilex's responses, Commerce issued a supplemental questionnaire on March 24, 1998. Eletrosilex responded promptly, but after analyzing this information, Commerce concluded that additional information was still needed on certain topics. A second supplemental questionnaire was issued on June 29, 1998 and a third was issued on July 6, 1998. Both supplemental questionnaires required responses within one week due to Commerce's statutory deadline of July 30, 1998 for filing its preliminary results. Eletrosilex did not submit responses to either request. On July 7, 1998 counsel of record for Eletrosilex informed Commerce that Eletrosilex was in the process of being acquired. Subsequently, on July 20, 1998 counsel informed Commerce that because of management reviews and changes in staffing Eletrosilex was not able to respond in a timely manner to the June 29 and July 6 questionnaires.

In the preliminary results, Commerce concluded, pursuant to section 782(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677m(e), that "while Eletrosilex data is incomplete for certain elements of the calculation, nevertheless the Department has enough data on the record to reasonably calculate a dumping margin." *Silicon Metal from Brazil: Preliminary Results of Antidumping Duty Administrative Review*, 63 Fed. Reg. 42,001, 42,007 (Aug. 6, 1998). In order to make this

calculation, Commerce relied on partial facts available,[1] and used an adverse inference[2] in applying

those facts. *Id*. Commerce determined that the adverse inference was appropriate because:

> In the past, Eletrosilex has demonstrated an understanding for requests of additional information by the Department. In this review Eletrosilex responded on April 10, 1998, to the Department's March 24, 1998 supplemental questionnaire. However, its failure to provide responses to our other supplemental questionnaires (i.e. dated June 29 and July 6, 1998) despite numerous opportunities to do so constitutes a failure to cooperate to the best of its ability with respect to our requests for information.

*Id.* (citation omitted). Thus, using adverse partial facts available, Commerce calculated a preliminary

dumping margin of 33.11 percent for Eletrosilex. *Id.* at 42008.

Commerce then issued its *Final Results* in which it "determined that Eletrosilex's

questionnaire responses on the record are insufficient for purposes of conducting a margin analysis."

*Silicon Metal from Brazil: Notice of Final Results of Antidumping Duty Administrative Review*, 64

Fed. Reg. 6305, 6310 (Feb. 9, 1999). After repeating its preliminary conclusion that Eletrosilex had

---

[1] Generally, Commerce uses partial facts available only to fill "gaps in the record due to deficient submissions or other causes." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-826, at 656, 869 (1994) ("SAA"). Pursuant to 19 U.S.C. § 1677m(d)-(e), when a party's response to a request for information is deficient and certain requirements, discussed *infra* p. 21-22, are not met Commerce may disregard the information that was submitted and use total, as opposed to partial, facts available.

[2] An adverse inference is applied when a party has not acted to the best of its ability to comply with requests for information. *See* 19 U.S.C. § 1677e(b). The adverse inference is intended to "ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." SAA at 870. In applying an adverse inference, Commerce may rely on information from "(1) the petition, (2) a final determination in the investigation under this subtitle, (3) any previous review under section 1675 of this title or determination under section 1675b of this title, or (4) any other information placed on the record." *See* 19 U.S.C. § 1677e(b). If an adverse inference is not warranted, "the facts available are information or inferences which are reasonable to use under the circumstances." SAA at 869.

failed to cooperate to the best of its ability, Commerce concluded that total adverse facts available should be used as the basis for Eletrosilex's dumping margin and imposed "the highest rate calculated for any respondent in any segment of this proceeding," 93.20 percent. *Id*. at 6311.

### *Discussion*

The Court has jurisdiction of this action pursuant to 19 U.S.C. § 1516a(a) and 28 U.S.C. § 1581(c). The Court shall uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). This standard requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). However, substantial evidence supporting an agency determination must be based on the whole record, and a reviewing court must take into account not only that which supports the agency's conclusion, but also "whatever in the record fairly detracts from its weight." *Melex USA, Inc. v. United States*, 19 CIT 1130, 1132, 899 F. Supp. 632, 635 (1995) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 478, 488 (1951)).

### *I. Commerce's Finding that Eletrosilex Did Not Act to the Best of its Ability*

In the *Remand Results*, Commerce determined that although Eletrosilex was undergoing significant managerial changes during June and July 1998, its failure to respond was ultimately a business decision; therefore it had not acted to the best of its ability regarding these requests for information. *See Remand Results* at 8. Commerce reached this conclusion based on an affidavit submitted[3] by Eletrosilex's President and Administrative-Financial Director detailing the company's management situation and business activities during the period in question. *Id*. at 6. Specifically, Commerce found that an investment fund, which was a major investor in Eletrosilex, took control of the company in April 1998, after the majority owner failed to meet financial obligations. *Id*. A number of high level executives including the company President, and Financial and Commercial Directors and some of the staff reporting to them were dismissed shortly thereafter. *Id*. In June 1998 the investment fund had found a potential buyer for Eletrosilex and was compiling "a complete package of historical and commercial data, along with future sales projections" for the buyer. *Id*. The only remaining staff capable of preparing responses to Commerce's questionnaires were busy during this time preparing the information for the new purchaser and preparing evaluative data for the investment fund's own assessment of the company. *Id*. at 6-7.

---

[3] On remand, the Court instructed Commerce "to reopen the administrative record and collect additional evidence concerning Eletrosilex's claimed inability to respond to the supplemental questionnaires." *American Silicon Technologies v. United States*, 24 CIT __, __, 110 F. Supp. 2d 992, 1003 (2000). Although the affidavit of Eletrosilex's President and Administrative-Financial Director was filed with the Court as an attachment to Eletrosilex's Complaint, it was not part of the administrative record initially before Commerce. Thus, this remand is the first time the agency has considered evidence concerning Eletrosilex's alleged inability to respond to the supplemental questionnaires in this review.

In August 1998, when Commerce issued its  preliminary results, the fund managing Eletrosilex was close to reaching an agreement for the sale of the company and decided to "temporarily suspend the costs associated with participating in further annual reviews at [Commerce] until completion of the acquisition discussions." *Id*. at 7.  As a result, Eletrosilex did not submit case briefs or rebuttal briefs on the preliminary results, although the petitioners in the review did so.  *Id*. Furthermore, Commerce found that when discussions with its potential buyer ultimately collapsed, Eletrosilex hired a new commercial director and resumed participation in antidumping proceedings. Commerce viewed this as evidence that Eletrosilex's "management made conscious decisions regarding what resources to expend for daily operations and where these resources should be dedicated."  *Id*. at 7-8.

Eletrosilex alleges that Commerce misrepresents the statements made in the affidavit and ignores other information submitted by Eletrosilex on remand.  Plaintiff Eletrosilex's Comments on Final Results of Redetermination Pursuant to Court Remand ("Pl.'s Comments") at 3.   Eletrosilex contends that the explanations Commerce gave in the *Remand Results* for its conclusion that Eletrosilex made a "deliberate 'management decision'" are the "same arguments that have already been rejected by this Court as being 'post hoc rationalizations.'"[4]  *Id.* at 4.  Furthermore, Eletrosilex argues that, contrary to Commerce's conclusion, it "repeatedly explained why it was not able to

---

[4]  Indeed, these were *post hoc* rationalizations when made by counsel for the agency in briefs submitted on the original Rule 56.2 motions since Commerce itself had not investigated Eletrosilex's claim that it was unable to respond.  Nevertheless, as American Silicon notes in its rebuttal comments, that fact does not prohibit the agency from reaching the same conclusion after considering, on remand, the information submitted by Eletrosilex in support of its claim that it was unable to comply with Commerce's requests.  *See* Defendant-Intervenors' Rebuttal Comments to Eletrosilex's Comments on Final Results of Redetermination Pursuant to Court Remand at 5.

dedicate resources to [answering] the supplemental questionnaires." *Id.* Eletrosilex charges

Commerce has neglected the additional information it submitted on remand and "disregard[ed] the

statements [regarding Eletrosilex's inability] contained *within* the affidavit." *Id.* (emphasis in the

original). Specifically, Eletrosilex cites the following portions of the administrative record on

remand:

- Paragraph 13 of the Concado Affidavit: "[W]e had no capability of responding to those requests at that time under the time restrictions placed. The Eletrosilex management team and staff was [sic] decimated . . . ."

- September 29, 2000, Submission at 2: "Eletrosilex continues to state that it was unable to respond to the Department's supplemental questionnaires because it was undergoing complete management and staffing changes."

- November 8, 2000, Submission at 2: "[T]he reason Eletrosilex could not respond to the Department's questionnaires was because it had dedicated all of its available sales, accounting, and managerial personnel to providing complete and accurate information to the potential acquirers."

- November 8, 2000, Submission at 3: "Given the heavy demands made on such personnel by the potential purchasers in the context of the due diligence process, it was impossible to pull all of the key personnel away from these urgent projects to prepare additional responses to the Department, particularly in sales, that had been involved in prior responses to the Department and had hands-on information and experience necessary to answer the supplemental questions."

- September 29, 2000, Submission, Exhibit 2: Minutes of the Board of Directors November 4, 1998, meeting detailing the resignation of Director-President, Mr. Gomez;

- September 29, 2000, Submission, Exhibit 3: Statement concerning the termination of the labor contracts of other key personnel;

- September 29, 2000, Submission, Exhibit 4: Communications from potential investors detailing the large volume of information requested.

*Id.* at 4-5. Due to Commerce's failure to consider the information submitted on remand, Eletrosilex concludes that the Court should "again remand this case to the Department with instructions to conduct a meaningful analysis of the substantial evidence collected during the remand proceeding . . . ." *Id.* at 3.

The Court finds that Commerce has complied with the Court's remand order and that its conclusion is supported by substantial evidence on the record. "In order for its finding to be supported by substantial evidence, 'Commerce needs to articulate why it concluded that a party failed to act to the best of its ability, and explain why the absence of this information is of significance to the progress of its investigation.'"[5] *Nippon Steel Corp. v. United States*, 24 CIT__, __, 118 F. Supp. 2d 1366, 1378 (2000) (quoting *Mannesmannrohren-Werke AG v. United States*, 23 CIT 826, 839, 77 F. Supp. 2d 1302, 1313-14 (1999)). Furthermore, "Commerce must find that a respondent could comply, or would have had the capability of complying if it knowingly did not place itself in a condition where it could not comply" and "must also find either a willful decision not to comply or behavior below the standard for a reasonable respondent." *Nippon Steel Corp.*, 24 CIT at __, 118 F. Supp. 2d at 1378-79 (citation omitted). In the present matter, the reason Eletrosilex could not answer Commerce's supplemental questionnaires was because it dedicated the personnel capable of answering those questions to preparing information requested by Eletrosilex's

---

[5] On remand, Eletrosilex does not challenge Commerce's explanation that the information requested in the supplemental questionnaires was necessary to determine whether certain sales should be calculated as Export Price or Constructed Export Price sales. *See Remand Results* at 9-12.

potential purchaser. *See* Affidavit of Marco Aurélio Cançado, Pl.'s Comments at App. 2, Ex. 1, ¶ 8. The record shows that Eletrosilex decided to suspend certain operations, including participation in antidumping proceedings, during the period in question in order to curtail costs in anticipation of the sale of the company. *See id*. at ¶¶ 5, 10. While Eletrosilex was facing bankruptcy during the period in question, the fact remains that it allocated its resources toward satisfying the requests of the prospective purchaser rather than Commerce.

### II.   *Commerce's Selection and Corroboration of an Adverse Facts Available Margin for Eletrosilex*

In the *Remand Results* Commerce concluded that the 93.20 percent adverse facts available dumping margin it applied to Eletrosilex for this administrative review was relevant despite the fact that it was calculated for a different respondent during the Less Than Fair Value investigation which took place six years prior to the period of review in question. *Remand Results* at 15. Commerce noted that margins calculated for Eletrosilex in prior and subsequent administrative reviews fluctuated between 18.87 percent and 51.84 percent, and margins for other respondents had fluctuated from zero to 81.61 percent. *Id*. at 13-14. Commerce also noted that Eletrosilex was "an experienced  participant in the antidumping proceedings since the 1991-1992 [period of review] [and] knew that if it failed to act to the best of its ability, and the Department applied adverse [facts available], the rate selected could very well be the highest calculated rate in the proceeding . . . ." *Id*. at 15. Thus, Commerce concluded that "[t]he fact that these disparate rates have continued throughout the reviews since the original [Less Than Fair Value] investigation, combined with the Eletrosilex's [*sic*] management decision not to respond to the requests for information, supports our

conclusion that the 93.20 percent rate from the investigation remains reasonable and relevant." *Id*.

at 15.

Eletrosilex argues that Commerce has not shown that the 93.20 percent margin "is more

probative than other margins calculated for Eletrosilex or other respondents" or that there is a

rational relationship between the chosen margin, which was "calculated for a different respondent

based on six months in 1990 and the margin applicable to Eletrosilex during the 1996-1997 period

of review." Pl.'s Comments at 11 (footnote omitted). Eletrosilex asks that the Court remand this

issue to Commerce again and select a rate within the range of rates calculated for Eletrosilex in prior

reviews, the highest being 51.84 percent. *Id*. at 12.

Although Commerce has "discretion to choose which sources and facts it will rely on to

support an adverse inference . . . . Commerce's discretion in these matters . . . is not unbounded."

*F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir.

2000). The Federal Circuit Court of Appeals has held that

> an adverse facts available rate [is] to be a reasonably accurate
> estimate of the respondent's actual rate, albeit with some built-in
> increase intended as a deterrent to non-compliance. Congress could
> not have intended for Commerce's discretion to include the ability to
> select unreasonably high rates with no relationship to the
> respondent's actual dumping margin. Obviously a higher adverse
> margin creates a stronger deterrent, but Congress tempered the
> deterrent value with the corroboration requirement. It could only
> have done so to prevent the petition rate (or other adverse inference
> rate), when unreasonable, from prevailing and to block any
> temptation by Commerce to overreach reality in seeking to maximize
> deterrence.

*Id; accord Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1340 (Fed. Cir. 2002).

In the present matter, Commerce is technically correct in stating that antidumping rates have

fluctuated from zero to 81.61 percent, but the 81.61 percent rate was based on partial facts available and was 13.74 percent higher than the next highest margin. Aside from the 81.61 percent rate, the highest calculated rates for the first through fifth administrative reviews were 53.63 percent, 51.84 percent, 61.58 percent, 67.93 percent, and 39.00 percent respectively. *See* Plaintiff Eletrosilex's Supplemental Brief at 3-4. The Court also finds it significant that the period of review in question began six years after the Less Than Fair Value Investigation in which the 93.20 percent margin was calculated. This fact along with the fact that this margin is 25.27 percent higher than the highest margin calculated based on actual information in the intervening administrative reviews (*i.e.* the 67.93 percent margin calculated in the fourth administrative review) leads the Court to conclude that the 93.20 percent margin is inconsistent with actual commercial practices at and around the time in question. Although an adverse facts available margin is to have "some built-in increase intended as a deterrent to non-compliance" in this instance it is so far removed from being "a reasonably accurate estimate of the respondent's actual rate" that it is disproportionately punitive in nature. Therefore, the Court remands this aspect of the *Remand Results* for a redetermination of the dumping margin to be applied to Eletrosilex in this administrative review.

### *Conclusion*

For the foregoing reasons, the *Remand Results* are remanded for a redetermination of the dumping margin to be assigned to Eletrosilex. Commerce shall have 90 days to submit its remand determination. The parties shall then have 30 days to submit comments on the remand determination. Any rebuttal comments shall be submitted within 15 days thereafter.

_____
R. KENTON MUSGRAVE, JUDGE


Dated: October 17, 2002
      New York, New York