Slip Op. 03 - 69

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| AMERICAN SILICON TECHNOLOGIES, ELKEM METALS COMPANY and GLOBE METALLURGICAL INC. | : | |
| Plaintiffs, | : | |
| v. | : | |
| UNITED STATES, | : | |
| Defendant, | : | |
| and | : | |
| LIGAS DE ALUMINIO S.A. | : | |
| Defendant-Intervenor. | : | **Before: MUSGRAVE, JUDGE** |
| | : | Consolidated Court No. 99-03-00149 |
| ELETROSILEX S.A., | : | |
| Plaintiff, | : | |
| v. | : | |
| UNITED STATES | : | |
| Defendant, | : | |
| and | : | |
| AMERICAN SILICON TECHNOLOGIES, ELKEM METALS COMPANY and GLOBE METALLURGICAL INC. | : | |
| Defendant-Intervenors. | : | |

[Plaintiff Eletrosilex, S.A. contests the Department of Commerce's second remand determination applying a 67.93 percent surrogate dumping margin to Eletrosilex as adverse facts available. Eletrosilex contends that: (1) the margin selected by Commerce is not reliable since it was calculated

on remand in another administrative review and is now on appeal before the Court of Appeals for the Federal Circuit; and (2) the margin fails to meet the requirement that it be "a reasonably accurate estimate of [its] actual rate, albeit with some built-in increase intended as a deterrent to non-compliance," *see F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("*De Cecco*"). **Held:** Since the surrogate margin selected by Commerce has not been invalidated, Commerce may use it as adverse facts available. The Court also finds that this margin is consistent with the requirement enunciated by the Federal Circuit in *De Cecco*. Therefore, Commerce's second remand determination is sustained.]

Decided: June 27, 2003

*Baker Botts*, LLP (*Samuel J. Waldon*, and *Matthew T. West*) for plaintiffs and defendant-intervenors American Silicon Technologies, Elkem Metals Company, and Globe Metallurgical Inc.

*Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Reginald T. Blades, Jr.*), and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Barbara J. Tsai*), of counsel, for defendant.

*Dorsey & Whitney*, LLP (*Philippe M. Bruno* and *Rosa S. Jeong*) for plaintiff and defendant-intervenor Eletrosilex, S.A.

**OPINION**

In this action plaintiff Eletrosilex S.A., a Brazilian producer of silicon metal, challenges the decision by the International Trade Administration of the United States Department of Commerce ("Commerce" or "the agency") to use total adverse facts available to determine its dumping margin in the sixth administrative review of the antidumping duty order on silicon metal from Brazil, *Silicon Metal From Brazil: Final Results of Antidumping Duty Administrative Review*, 64 Fed. Reg. 6305 (Feb. 9, 1999). The Court has remanded this determination twice in prior Opinions. *See American Silicon Technologies v. United States*, 26 CIT__, 240 F. Supp. 2d 1306 (2002); *American Silicon Technologies v. United States*, 24 CIT 612, 110 F. Supp. 2d 992 (2000). Most recently, the Court

held that the 93.2 percent dumping margin selected by Commerce as adverse facts available for

Eletrosilex was disproportionately high relative to commercial practices at and around the relevant

time period.  26 CIT at __, 240 F. Supp. 2d at 1313.  Thus the Court remanded this matter for

Commerce to select a different dumping margin.  *Id.*  Commerce issued its *Final Results of*

*Redetermination Pursuant to Court Remand* ("*Second Remand Results*") on January 22, 2003, and

selected a 67.93 percent margin calculated for another respondent in the fourth administrative review

as the adverse facts available rate for Eletrosilex.  *See Second Remand Results* at 3.   In selecting

this rate, Commerce reasoned:

> Pursuant to the Court's directive, the Department selected an alternate
> rate to apply as adverse [facts available] to Eletrosilex.  The highest
> rate calculated for Eletrosilex in any segment of this proceeding was
> 53.63 percent.  The highest rates calculated for other respondents in
> other segments of this proceeding were 91.06 ("all others rate" from
> less-than-fair-value (LTFV) investigation), 93.20 (highest rate
> calculated for any respondent during the LTFV investigation), 61.58
> (highest rate calculated for any respondent during the third review of
> this proceeding) and 81.61 and 67.93 percent (the two highest rates
> calculated for respondents during the fourth review of this
> proceeding).
>
> Eletrosilex's previously calculated rate of 53.63 percent is not an
> appropriate rate for use as adverse [facts available] because the rate
> was calculated for a review period during which Eletrosilex was
> cooperative.  Hence, the use of this rate would not carry an adverse
> inference.  The Court dismissed the 81.61 rate issued in the fourth
> review period and indicated that margins above 90 percent in this
> proceeding "lack a rational relationship to Eletrosilex."   The
> Department therefore chose as adverse [facts available] the 67.93
> percent calculated rate issued in the fourth administrative review of
> this case.  Because this rate is from a review period that began two
> years before the instant review period, it should reasonably reflect
> commercial practices at or around the time in question.  Moreover, as
> the 67.93 percent rate is above Eletrosilex's previously calculated rate
> of 53.63 percent, the Department finds that this rate serves the

Court's directive of selecting a rate that is a "reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." Therefore, in order to comply with the Court's order, we have selected 67.93 percent as the adverse [facts available] rate to apply to Eletrosilex for the sixth review of this proceeding. Consequently, Eletrosilex's dumping margin for the sixth review of this proceeding will change from 93.20 percent to 67.93 percent.

*Second Remand Results* at 2-3 (footnote omitted).

Eletrosilex subsequently submitted comments to the Court objecting to the *Remand Results* and Commerce and defendant-intervenors American Silicon Technologies, Elkem Metals Co., and Globe Metallurgical Inc. (collectively "American Silicon") submitted rebuttal comments. For the reasons which follow, the Court sustains Commerce's *Second Remand Results*.

***Jurisdiction and Standard of Review***

The Court has jurisdiction of this action pursuant to 19 U.S.C. § 1516a(a) and 28 U.S.C. § 1581(c). The Court shall uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). This standard requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). However, substantial evidence

supporting an agency determination must be based on the whole record, and a reviewing court must take into account not only that which supports the agency's conclusion, but also "whatever in the record fairly detracts from its weight." *Melex USA, Inc. v. United States*, 19 CIT 1130, 1132, 899 F. Supp. 632, 635 (1995) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 478, 488 (1951)).

***Discussion***

Eletrosilex argues that the 67.93 percent margin is not reliable because it was "calculated for another respondent, Companhia Brasileira Carbureto de Calcio ("CBCC"), in the court-ordered remand proceeding" and "is not a final calculated margin." Eletrosilex's Comments on the Final Results of Redetermination Pursuant to Court Remand ("Eletrosilex's Comments") at 3-4. Eletrosilex notes that Commerce originally calculated and published a 0.37 percent rate for CBCC in the fourth administrative review. *Id*. at 4. This Court reversed Commerce's determination, and on remand Commerce calculated the 67.93 percent rate. The Court entered judgment sustaining the remand results, but subsequently stayed the judgment as it pertained to CBCC pending the outcome of CBCC's appeal, which has yet to be decided. Thus, Eletrosilex concludes that, "the remand decision has not become final and is without any legal effect at this time." *Id*. at 4. Eletrosilex also argues that it is inappropriate to use this rate as adverse facts available because it will have no recourse if the Federal Circuit subsequently finds in CBCC's favor. *Id*. at 6.

Eletrosilex also argues that the 67.93 percent rate is not a reasonably accurate estimate of its actual rate. *Id*. It notes that for three reviews prior to the one at issue its dumping margins were 39.00 percent, 38.39 percent, and 13.18 percent. *Id*. at 7. Moreover, it avers that CBCC was "the

*only* respondent, since the original investigation, that received a calculated dumping rate that is significantly over 50 percent." *Id*. (emphasis in the original).

Eletrosilex contends that Commerce chose the 67.93 percent margin because it was slightly higher than Eletrosilex's highest calculated rate and was therefore "'a reasonably accurate estimate' of Eletrosilex'[s] 'actual rate' of dumping and that the additional 14.3 percent (the difference between the two rates) serves as the 'built-in increase intended as a deterrent to non-compliance.'" *Id*. at 8. Eletrosilex argues that this reasoning is misleading since the 53.63 percent rate was "not calculated for the period of review at issue, but was calculated in the first administrative review" and is therefore "old and irrelevant." *Id.* at 9. Eletrosilex further alleges that the economic conditions in Brazil at the time the 53.63 percent rate was calculated were different from the conditions during the period of review at issue in this action. *Id.* Finally, Eletrosilex challenges the logic behind Commerce's statement that "[t]he fact that Eletrosilex was willing to cooperate in a review to obtain the 53.63 percent rate suggests that, in this review, in which Eletrosilex was not willing to cooperate, Eletrosilex may have been dumping at a rate significantly higher than 53.63 percent." *Id*. at 10 (quoting *Second Remand Results* at 7-8). Eletrosilex contends that it does not follow that the 53.63 percent margin calculated in an administrative review five years earlier is representative of Eletrosilex's actual dumping margin during the period of review at issue in this case just because Eletrosilex was cooperative in the earlier review. *Id*.

Eletrosilex argues that Commerce should arrive at a reasonable estimate of its dumping rate for this review by looking at its calculated rates in the reviews leading up to this one and its preliminary rate in this review. *Id*. at 10-11. Based on this analysis, Eletrosilex believes that a rate

between 33 and 39 percent would be a relatively accurate estimate of its actual dumping margin for this period. *Id*. at 11. Eletrosilex also contends that the extra percentage added to this estimated actual rate as a "deterrent for non-compliance" "should not exceed 14.3 percent." *Id*. As a result, Eletrosilex posits 53.63 percent, its highest ever calculated rate, as an appropriate adverse facts available rate for Commerce to apply in this review. *Id*.

While Eletrosilex argues its case well, the Court does not agree with its conclusions. First, regarding the reliability of the 67.93 percent margin, the Court holds that Commerce may use margins calculated during remand proceedings as adverse facts available, even if they are under appeal. The Court concludes that there is no meaningful difference between the question of whether Commerce may use a margin that is on appeal before the Federal Circuit and the question of whether Commerce may use a margin that is in litigation before this Court. In *D & L Supply Co. v. United States*, 113 F.3d 1220 (Fed. Cir. 1997), the Federal Circuit held that Commerce could not use a margin that had been invalidated as the best information available ("BIA")[1] margin for an uncooperative respondent. The court qualified this holding by stating:

> This is not to say that Commerce must wait until a particular antidumping duty rate has been judicially blessed or has otherwise become final before that rate can be used as the basis for calculating a BIA rate. A margin that has not yet been overturned is presumed to be accurate and can properly be used in the BIA determination.

*Id*. at 1224. Based on this presumption of accuracy and the fact that the margin in question has been sustained by this Court, Commerce is permitted to use the 67.93 margin as adverse facts available.

The Court also finds that the rate selected by Commerce on remand bears a rational

---

[1]   The statute formerly referred to "facts available" and "best information available." *Compare* 19 U.S.C. § 1677e(c) (1988) *with* 19 U.S.C. § 1677e(a) (1994).

relationship to Eletrosilex's commercial practices and meets the requirement that it be "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). Unlike the rate previously assigned to Eletrosilex, which was calculated in the original Less-Than-Fair-Value Investigation that began six years earlier, *see American Silicon Technologies*, 26 CIT at __, 240 F. Supp. 2d at 1312, the 67.93 percent margin was calculated in an administrative review only two years prior to the period of review at issue in this action. Although Eletrosilex's highest prior rate, 53.63 percent, was calculated five years prior to the period in question, that does not make it irrelevant to this determination. Since Eletrosilex had previously dumped at that level, it is not unreasonable for Commerce to conclude that its actual rate could have once again fallen in this range.[2] In light of this, the 67.93 percent margin is not an unreasonably high surrogate margin for Commerce to apply to Eletrosilex in this review.

### *Conclusion*

For the foregoing reasons, the *Second Remand Results* are sustained, and judgment shall enter in this action.

---

[2] While Eletrosilex states that the 53.63 percent dumping margin resulted from economic conditions in Brazil that were not present at the time of the review at issue in this action, it has provided no evidence to support this assertion. In the *Second Remand Results* Commerce rejected this argument noting that another respondent received only a 0.42 percent margin for that same period. *Second Remand Results* at 7. Thus it is not readily apparent that economic conditions were a direct cause of Eletrosilex's prior margin.

_____
R. KENTON MUSGRAVE, JUDGE


Dated: June 27, 2003
       New York, New York