**Slip. Op. 03-92**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

FUJIAN MACHINERY AND EQUIPMENT
IMPORT & EXPORT CORPORATION, and
SHANDONG MACHINERY IMPORT &
EXPORT CORPORATION,

        Plaintiffs,

        v.

UNITED STATES, and THE UNITED
STATES DEPARTMENT OF COMMERCE,

        Defendants,

        and

O. AMES COMPANY,

        Defendant-
        Intervenor.

PUBLIC VERSION

Court No. 99-08-00532

[Commerce antidumping duty remand determination sustained.]

Dated: July 28, 2003

Sidley, Austin, Brown & Wood (Lawrence R. Walders and Neil C. Pratt) for plaintiffs Fujian Machinery and Equipment Import & Export Corporation and Shandong Machinery Import & Export Corporation.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia McCarthy, Assistant Director, Kenneth S. Kessler, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Office of Chief Counsel for Import Administration, United States Department of Commerce (Elizabeth Doyle), for defendants.

Wiley, Rein & Fielding (Charles O. Verrill, Jr. and Eileen P. Bradner) for defendant-intervenor O. Ames Company.

**OPINION**

**GOLDBERG, Judge:** This case is before the Court following remand to the United States Department of Commerce ("Commerce").  In Fujian Machinery and Equipment Import & Export Corp. v. United States, 25 CIT __, 178 F. Supp. 2d 1305 (2001) ("Fujian I"), familiarity with which is presumed, the Court sustained in part and remanded in part Commerce's determination with respect to plaintiffs Fujian Machinery and Equipment Import & Export Corporation ("FMEC") and Shandong Machinery Import & Export Corporation ("SMC") in Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China; Final Results and Partial Recission of Antidumping Duty Admin. Reviews, 64 Fed. Reg. 43,659 (Aug. 11, 1999) ("Final Results").

In Fujian I, the Court found that Commerce had properly determined that SMC had failed verification and that FMEC had failed verification with respect to one of the four classes of subject merchandise, bars/wedges.  However, the Court also held that Commerce had not adduced substantial evidence showing that FMEC had failed verification with respect to the other three classes of subject merchandise, or that SMC's and FMEC's supplier factories, "Factory A" and "Factory B" (collectively, the "Factories") had failed verification.  In addition, the Court found Commerce's decision to apply adverse facts available

("AFA") and to apply the PRC-wide dumping margins to FMEC and SMC to be unsupported by substantial evidence and not otherwise in accordance with law.  The Court remanded the matter to Commerce with instructions to accept certain additional evidence from FMEC and thereupon to reconsider, in light of that evidence and the Court's opinion in Fujian I, whether: (1) FMEC had failed verification with respect to the other three classes of subject merchandise; (2) Factory A and Factory B had failed verification; (3) SMC's verification failure warranted the application of AFA; and (4) if Commerce determined on remand that FMEC had failed verification, reconsider whether the application of AFA to FMEC was warranted.

Commerce duly complied with the Court's order.  After accepting FMEC's additional evidence, Commerce issued draft Redetermination Results (Jan. 23, 2002) ("Draft Remand Results") and then, after receiving comments from FMEC and SMC, the Final Results of Redetermination Pursuant to Court Remand (Feb. 20, 2002) ("Remand Results").  In the Remand Results, as in the Draft Remand Results, Commerce answered each of the above four questions in the affirmative.  It then calculated separate rates for FMEC and SMC that were identical to the rates originally selected in the Final Results.

FMEC and SMC submitted Comments Regarding the Final Results of Redetermination Pursuant to Court Remand ("Plaintiffs'

Comments"), and Commerce submitted its Rebuttal to Plaintiffs'
Comments ("Commerce's Rebuttal").

The Court has jurisdiction under 28 U.S.C. § 1581(c) (2000).
The Court must uphold Commerce's determination if it is supported
by substantial evidence and otherwise in accordance with law.  19
U.S.C. § 1516a(b)(1)(B)(i) (2000).  After due consideration of
these submissions, the administrative record, and all other
papers had herein, and for the reasons that follow, the Court
sustains the Remand Results.

I.   **DISCUSSION**

   A.   **Commerce's Determination that FMEC Failed Verification
        With Respect to All Four Classes of Subject Merchandise
        Is Supported by Substantial Evidence.**

In Fujian I, the Court held that FMEC's total failure to
report any U.S. sales of bars/wedges justified Commerce's
determination that FMEC failed verification with respect
bars/wedges, but that same failure did not clearly support
Commerce's finding that FMEC had failed verification with respect
to the other three classes of subject merchandise.  In addition,
the Court found that other instances of verification failures
cited by Commerce did not constitute substantial evidence,
because apparent problems during the verification process had
hindered FMEC's ability to supply the requested data.  The Court
ordered Commerce to accept this data and to reconsider its
findings.

Court No. 99-08-00532                                              Page 5

In the Remand Results, Commerce again found that FMEC had failed verification with respect to the other three classes of subject merchandise. Commerce cites the following reasons for its determination: (1) an overall lack of preparation by FMEC prior to verification; (2) its lack of confidence in the overall accuracy of FMEC's submissions, engendered by FMEC's total failure to report its U.S. sale of bars/wedges; (3) FMEC's failure to provide timely and sufficient information about its other branches and subsidiaries, sufficient to prove that those branches and subsidiaries had no U.S. sales; (4) significant discrepancies with respect to the sales revenue reported on the Hand Tools Department's 1997 financial statements and its income statements; (5) FMEC's failure to submit all its February 1997 sales invoices and vouchers; and (6) FMEC's failure to submit quantity and value worksheets. See Commerce's Rebuttal, at 13-14; see also Remand Results, at 10-14.

### 1. Insufficient or marginal evidence of FMEC's verification failure

The first and second of these reasons do not constitute substantial evidence supporting Commerce's determination. A general reference to a respondent's lack of advance preparation is not itself evidence of a verification failure; it is the manifestations of that unpreparedness that matter. Commerce must point to specific examples of how the alleged unpreparedness

impacted the verification process, rather than rely on such a vague, unsupported, conclusory assertion.[1]

The determination that FMEC's failure to report its one U.S. sale of bars/wedges casts a similar shadow over the total veracity of FMEC's responses is also a form of impermissible bootstrapping not consistent with the Court's holding in Fujian I. Because "a completely errorless investigation is simply not a reasonable expectation," Nippon Steel Corp. v. United States, 25 CIT __, __, 146 F. Supp. 2d 835, 841 n.10 (2001), it would be unfair to a respondent if Commerce were permitted to extrapolate from a single error, which may well have been an isolated oversight, a conclusion that the entirety of the respondent's submissions concerning other classes of subject merchandise are unreliable.[2]

Commerce's third reason for its determination appears to be more substantive, but is underdeveloped. Commerce cites problems related to financial data for FMEC's branches and affiliates, as well as its short- and long-term investment records, that FMEC

_____

[1] Moreover, a general reference to the respondent's lack of preparation is particularly unwarranted in this case, since the Court already determined that the FMEC verification was marred by miscommunication.

[2] On the other hand, numerous "oversights" would likely suggest a "pattern of unresponsiveness" justifying not only the application of facts available ("FA"), but of AFA. See Nippon Steel, 25 CIT at __, 146 F. Supp. 2d at 840. It is incumbent upon Commerce specifically to identify such oversights. Substantial evidence does not comprise broad allusions to the verifiers' gut feelings.

did not provide at verification but did provide thereafter pursuant to the Court's Order in Fujian I.  Before this Court, Commerce argues that FMEC failed to report other branches that could have had sales of subject merchandise, see Commerce's Rebuttal, at 14, but this contention is not borne out by the record.  In the Remand Results, Commerce devotes a single sentence to a cursory attempt to tie these records to the fourth and fifth shortcomings outlined supra and discussed infra, but it does not explicate its reasoning.  To the extent that this may be a disguised attempt to hold FMEC to account for its failure to provide the data at verification, it contravenes the Court's Order in Fujian I.  At the same time, the Court observes that FMEC does not refute Commerce's finding in any way in the Plaintiffs' Comments.  The Court thus concludes that Commerce's finding on this issue constitutes the proverbial scintilla of evidence, but no more, to show a verification failure.

### 2.  Substantial evidence of a verification failure

By contrast, the Court views the three remaining bases that Commerce cites as rationales for its determination to be particularly probative.  Significantly, each of the following problems relates to data that FMEC was permitted to submit, pursuant to the Court's Order in Fujian I, on November 27, 2001, well after the on-site verification.

a.    *The Hand Tools Department's financial statements
      and income statements*

First, Commerce asserts that it could not verify the
quantity and value of FMEC's U.S. sales for the hand tool
production unit for the period from January through April 1997,
when it was known as the "Hand Tools Department."[3]  Commerce
explains that the verifiers could not reconcile the Hand Tools
Department's sales revenue as reported in its departmental
financial statements, which data was provided at verification,
with the Department's monthly "income statements," which FMEC
submitted following Fujian I.  Confusion over whether a
particular value reported on the income statement for April 1997
was cumulative, bi-monthly, or monthly led Commerce to conclude
that either FMEC had under-reported sales on its financial
statements in the amount of at least [                ] or had
over-reported them in the amount of [                ] -- a
discrepancy of either 15 percent or 47 percent, respectively.
See Remand Results, at 11.

The Court is inclined to credit FMEC's explanation that the
value is cumulative, but this explanation does nothing to dispel
the inference that FMEC either over- or under-reported its

---

[3]  In May 1997, the same department came under new management and
was renamed the "General Machinery & Tools Department."  Commerce
reported no difficulty in reconciling the sales income records of
the department during this later period.

sales.[4]  FMEC offers no colorable excuse for this error.  Its argument that the Hand Tools Department's financial statement is not a part of the administrative record is bogus, as the original FMEC Verification Report[5] plainly references the statement and the value that Commerce cites in its <u>Remand Results</u>.  <u>See</u> FMEC Verification Report, at 8.  FMEC also baldly claims that the income statement can be reconciled with the financial statement, but it fails to explain how this can be so given the 47 percent disparity between the reported sales figures in the two documents.

Consequently, as Commerce reasonably concluded, the "nature and size of this reconciliation discrepancy alone makes it impossible for [Commerce] to determine whether FMEC fully and accurately reported its U.S. sales."  <u>Remand Results</u>, at 24.  Because an accurate determination of U.S. sales is critical to the calculation of dumping margins, the discrepancies in the Hand Tools Department's sales records constitute substantial evidence

---

[4]  If, as FMEC maintains, the April 1997 value was cumulative for the first four months of 1997, the total sales reflected in the Hand Tools Department's monthly income statements is [          ].  Total sales revenue listed on the Hand Tools Department's financial statement for the same period is indisputably [                    ].  Thus, either the financial statement over-reported sales by 47 percent, the income statement under-reported sales by 32 percent, or neither statement accurately reports sales.  In any such event, it is plain that Commerce was unable to determine whether FMEC reported all its U.S. sales.

[5]  All defined terms not defined herein have the meaning, if any, ascribed to them in <u>Fujian I</u>.

that FMEC failed verification, particularly when taken with the remaining deficiencies, which are equally serious.

        b.    *The February 1997 sales invoices and vouchers*

The next deficiency cited is FMEC's failure to submit all its February 1997 sales invoices and vouchers.[6]  Commerce sought the vouchers for all sales of subject and non-subject merchandise in order to confirm that FMEC had accurately reported its income from all U.S. sales.  Rather than request FMEC's vouchers for the entire period of review, however, Commerce sought them only for the month of February 1997.  Because of apparent miscommunication at the on-site verification of FMEC, FMEC did not provide them then, but was subsequently granted leave to do so by the Court's Order in Fujian I.  FMEC turned over only invoices for two U.S. sales and one voucher from a third U.S. sale.[7]  In the Remand Results, Commerce determined that this data was insufficient to document all U.S. sales, because (1) FMEC substantiated two sales only by invoices, not vouchers, and (2) FMEC did not provide any invoices or vouchers for sales of non-subject merchandise.

FMEC's explanation for these shortcomings is that it substantially complied with Commerce's information request

---

[6]  Whereas an invoice is a bill of sale, FMEC's sales vouchers indicate the amount of income that FMEC actually receives from a sale.

[7]  The invoices and the voucher showed sales in the amount of [          ], [          ], and [          ], respectively, as against total departmental sales of [          ].

because the invoices and voucher it provided are "samples" of its

sales documentation and should be deemed sufficient, since

verification is only a "spot check" and a "selective examination

rather than testing of an entire universe." See Plaintiffs'

Comments, at 18-19 (quoting respectively Micron Tech., Inc. v.

United States, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (citing

Monsanto Co. v. United States, 12 CIT 937, 698 F. Supp. 275, 281

(1988)), and Bomont Indus. v. United States, 14 CIT 208, 733 F.

Supp. 1507, 1508 (1990)).

The most charitable view of this argument is that it

reflects an outsized optimism about the respondent's role in the

verification process.  The cases FMEC cites involved claims by

various domestic petitioners that Commerce should have conducted

more extensive verifications of the foreign respondents.  The

courts merely pointed out the obvious: time and resources are

finite, and Commerce's proven methodology is to survey only a

portion of a respondent's data. See Department of Commerce

Antidumping Manual, chapter 13 § II.D.1, at p.5, available at

http://ia.ita.doc.gov/admanual/index.html.  The choice of which

data to sample, however, always rests with Commerce,[8] not the

---

[8]  Of course, this presumes the verifiers' good faith.  One can
postulate a verification request so unreasonably burdensome as to
be arbitrary or capricious, but Commerce's request here for the
Hand Tools Department's February 1997 sales documentation is far
removed from that hypothetical extreme.  Otherwise, as suggested
by Fujian I, the verifiers can require whatever relevant
information they wish so long as they afford the respondents a
reasonable opportunity to provide it.

respondent.  See Micron Tech., 117 F.3d at 1395 ("Commerce has 'the discretionary authority to determine the extent of investigation and information it needs.'") (quoting PPG Indus., Inc. v. United States, 978 F.2d 1232, 1238 (Fed. Cir. 1992). Commerce quite reasonably chose to sample the Hand Tools Departments' sales documentation by requesting such documentation for only a single month,[9] and having issued that request, it was entitled to FMEC's full compliance.  Cf. Thyssen Stahl AG v. United States, 19 CIT 605, 606, 608, 886 F. Supp. 23, 25, 26-27 (sustaining determination that respondent failed verification where respondent "provided only one, self-selected, freight invoice to support its calculations").

Commerce is likewise entitled to infer from FMEC's failure to provide the requested documentation for February 1997 that FMEC's related data for the remaining period of review would be similarly unreliable.  Because this documentation is important to tracing all U.S. sales, this shortcoming constitutes substantial evidence in support of Commerce's finding that FMEC failed verification.

> c.  *Quantity and value worksheets*

---

[9]  In fact, the record suggests that in response to the limitations of FMEC's accounting system, Commerce narrowed its original request to encompass only the February 1997 documentation.

Finally, FMEC failed altogether to submit any of the quantity and value worksheets that Commerce requested, notwithstanding the Court's express invitation for it to do so in Fujian I.  See 25 CIT at __, 178 F. Supp. 2d at 1321.  FMEC has not offered any reason for this omission, either to Commerce in its response to the Draft Remand Results, or to the Court in the Plaintiffs' Comments.  As Commerce has explained, quantity and value worksheets are the "working basis" by which a respondent prepares its response to the verifiers' questionnaires and subsequent inquiries.  See Remand Results, at 8.  Failure to submit such worksheets, despite several opportunities to do so, is the sort of lapse that Commerce may legitimately regard as casting doubt on the quality of FMEC's underlying data.

### 3.  Summary

In Fujian I, the Court sustained Commerce's determination in the Final Results that FMEC failed verification with respect to bars/wedges.  The Court now sustains Commerce's determination in the Remand Results that FMEC failed verification with respect to the other three classes of subject merchandise.  Commerce has adduced substantial evidence showing that, with respect to each such class of merchandise, FMEC was unable to comply with significant information requests, and thus could not demonstrate that it had fully and accurately reported all U.S. sales. Because of the importance of U.S. sale data, Commerce's

determination that FMEC failed verification, and that this failure warranted the application of total FA, is in accordance with law. <u>Cf.</u> <u>Branco Peres Citrus, S.A. v. United States</u>, 25 CIT __, __, 173 F. Supp. 2d 1363, 1370 n.5 (2001) ("Commerce was justified in its use of facts available by virtue of Plaintiff's cost data not having been provided. Indeed, a party's failure to provide requested information is sufficient grounds for the use of facts available.")

**4.  Irrelevance of the Factories' verifications**

As noted, in <u>Fujian I</u> the Court sustained Commerce's determination that SMC had failed verification.  Because the Court has now found Commerce's determination that FMEC likewise failed verification to be supported by substantial evidence, the Court deems it unnecessary to decide whether the Factories also failed verification.  Commerce has emphasized, and the Court agrees, that FMEC's and SMC's verification failures are sufficient to warrant the use of FA (or AFA, as the case may be) regardless of its determination with respect to the Factories. <u>See, e.g.,</u> <u>Remand Results</u>, at 18.  Furthermore, Commerce did not cite the alleged verification failures of the Factories as support for its decision in the Remand Results to apply AFA to FMEC and SMC.  Because a review of Commerce's determination with respect to the Factories would have no bearing on the outcome of

this case, and would thus be dicta, the Court declines to undertake such a review.

### B. Commerce's Determination to Apply AFA to FMEC and SMC Is Supported by Substantial Evidence and Is Otherwise in Accordance with Law.

If a respondent in an antidumping investigation withholds or fails to provide information requested by Commerce, significantly impedes a proceeding, or provides information that is not verifiable, Commerce is directed to "use the facts otherwise available in reaching the applicable determination."  19 U.S.C. § 1677e(a)(2) (2000); see also Fujian I, 25 CIT at __, 1332; Reiner Branch GmbH & Co. KG v. United States, 26 CIT __, __, 206 F. Supp. 2d 1323, 1336 (2002).  If Commerce determines that the respondent "has failed to cooperate by not acting to the best of its ability to comply with a request for information . . . [Commerce] may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b); see also Fujian I, 25 CIT at __, 178 F. Supp. 2d at 1332; American Silicon Techs. v. United States, 26 CIT __, __, 240 F. Supp. 2d 1306, 1308 (2002).

FMEC and SMC failed verification by failing to provide requested information and providing unverifiable information, Commerce is required to use the facts available.[10]  The sole

---

[10]  In addition, these failures were sufficiently extensive that the gaps in the record may not be remedied by the partial use of adverse facts available.

remaining issue, therefore, is whether in using the facts available Commerce may draw adverse inferences, or in the vernacular, use AFA. "In order for its finding to be supported by substantial evidence, Commerce needs to articulate why it concluded that a party failed to act to the best of its ability, and explain why the absence of this information is of significance to the progress of its investigation." American Silicon Techs., 26 CIT at __, 240 F. Supp. 2d at 1311 (citations and internal quotation marks omitted); see also Branco Peres, 25 CIT at __, 173 F. Supp. 2d at 1371-72 (citing Nippon Steel Corp. v. United States, 24 CIT __, __, 118 F. Supp. 2d 1366, 1378 (2000)). "However, the function of this Court is not to reweigh the evidence, but rather to ascertain whether Commerce's determination is unsupported by substantial evidence on the record." A.K. Steel Corp. v. United States, 21 CIT 1265, 1271, 988 F. Supp. 594, 601 (internal brackets, quotation marks, and ellipses omitted) (quoting Metallverken Nederland B.V. v. United States, 13 CIT 1013, 1017, 728 F. Supp. 730, 734 (1989)).

### 1. Application of AFA to FMEC

In the Remand Results, Commerce determined that the application of AFA to FMEC was warranted because FMEC had the ability to comply with Commerce's information requests, and that its multiple failures to do so suggest a pattern of nonresponsiveness. Specifically, Commerce found that the

information sought must have existed because FMEC would have relied on it in generating its questionnaire responses. Commerce concluded that FMEC's failure to provide such documents at verification, and thereafter as permitted by the Court's Order in Fujian I, as well as the fact that FMEC would have benefitted by not providing data related to U.S. sales, suggests a pattern of non-responsiveness. Commerce also emphasizes FMEC's lack of preparation at verification.

FMEC argues that the law requires Commerce to show willful or deliberate noncompliance, and that Commerce has failed to do so. FMEC also objects that Commerce is not entitled to cite its preparedness for and conduct at verification as a basis to impose AFA. FMEC understands Fujian I to have conclusively determined that the deficiencies at verification were due to inadvertent errors.

These arguments are unconvincing. As an initial matter, the Court notes that FMEC misstates Commerce's obligation. Commerce need not prove willful or deliberate noncompliance; rather,

> Commerce must find that [the respondent] could comply, or would have had the capability of complying if it knowingly did not place itself in a condition where it could not comply. Commerce must also find either a willful decision not to comply or behavior below the standard for a reasonable respondent.

Branco Peres, 173 F. Supp. 2d at 1372.

Moreover, the Court sees no need to resolve the question of the adequacy of FMEC's actions at verification. Aside from the

insufficient state of the record on this point,[11] the issue became irrelevant once the Court afforded FMEC the opportunity to submit documents post-verification. Had FMEC used that opportunity to furnish Commerce with all requested documents, Commerce would have no basis to find that FMEC did not comply to the best of its ability. On the other hand, it is precisely because FMEC had this extra time that its noncompliance is particularly egregious. FMEC specifically represented to Commerce and the Court that it would have provided all necessary documents if only the verification had progressed more smoothly. Ipso facto, FMEC could comply with Commerce's information requests, or believed that it did. Accordingly, its failure to provide the various data constitutes behavior below the standard for a reasonable respondent. See Reiner Brach, 26 CIT at __, 206 F. Supp. 2d at 1337-38 (upholding choice of AFA against respondent who failed to provide information about home market sales and assumed that the information it submitted was sufficient, and supplied vague answers to other questions).

---

[11] Both sides devote considerable effort to debating essentially factual issues such as what the verifiers told a particular employee or FMEC's counsel. In Fujian I, the Court considered FMEC's consistent and uncontested assertions on this point sufficient to order a remand. In order to issue a final judgment that turned in part on such a factual issue, however, the Court would at a minimum expect to see affidavits from the relevant persons, which neither party has furnished, or else take the extraordinary step of trying the matter.

Therefore, the Court sustains Commerce's use of AFA to calculate FMEC's dumping margin.

### 2. Application of AFA to SMC

The validity of Commerce's decision to apply AFA to SMC requires closer scrutiny, as SMC did not enjoy the opportunity afforded FMEC to submit documents post-verification. Commerce justifies its decision to impose AFA for the following reasons: (1) SMC admitted that it had relied on quantity and value worksheets in preparing its questionnaire responses, yet never disclosed such worksheets to Commerce; (2) SMC did not reconcile certain sales data with its departments' financial statements, because (a) they could not complete the task within the time frame of verification because their computerized accounting records did not distinguish sales by market, yet SMC never requested the opportunity to submit the information later, and (b) the two statements are normally reconciled three months after the release of the departmental statements; (3) SMC failed to provide invoices and other sales documentation for transactions involving non-subject merchandise, on the grounds that the sales personnel with the information were absent; (4) SMC failed to report the existence of several departments, which thus prevented Commerce from verifying that the departments had no U.S. sales; and (5) these shortcomings indicate a lack of preparation for

verification.[12]  See Remand Results, at 6-8.  Commerce thus concludes that SMC had the ability to furnish the various missing data, and that its failure to do so reflects a pattern of non-responsiveness as well as serious inattention to its statutory obligations.

SMC's response to these arguments is not persuasive.  It cites the SMC Verification Report as proof that it did furnish the requested quantity and value worksheets, but as Commerce notes, the quoted excerpt is selective and misleading.[13]  While SMC explains that its accounting records do not distinguish sales by market, this limitation does not justify its failure to first turn over the source documents during verification, and then request the opportunity to manual reconcile the information.

SMC also claims that it was able to reconcile the departmental and company-wide financial statements, and that the only discrepancy was due to a [                    ] and it appends to the Plaintiffs' Comments certain record evidence purporting to show this.  Commerce, however, disputes this

---

[12]  From this, Commerce infers that both that SMC could have accelerated the reconciliation and performed it before verification, and that such a reconciliation should in any event have already been performed as Commerce was requesting 1997 data in late 1998.

[13]  The sentence in the SMC Verification Report immediately preceding the one that SMC quotes expressly states that "SMC did not prepare for the verification any of the quantity and value worksheets requested in the Department's sales verification outline."  See SMC Verification Report, at 7.

interpretation of the appended documents. Accordingly, the Court must defer to Commerce as the finder of fact, and decline SMC's invitation to resolve this issue. Cf. Hoogovens Staal BV v. United States, 25 CIT __, __, 93 F. Supp. 2d 1303, 1307-08 (2000) (observing that Court may not "reweigh or reinterpret the evidence of record").

Finally, SMC does not justify the absence of certain personnel with sole access to records, or its failure to disclose the existence of certain departments. Instead, SMC details the information that it did supply, and suggests that "[t]his record does not demonstrate the type of willful withholding of evidence that warrants the application of AFA." Plaintiffs' Comments, at 14. As explained supra, see Part I.B.2, however, respondents do not have the right to respond selectively to relevant information requests, and SMC cannot show that its noncompliance was due to mere inadvertence or oversight. As this information, along with the other information SMC insufficiently disclosed, was necessary to show that SMC reported all U.S. sales, its relevance cannot be disputed.

Collectively, this evidence is substantial enough to show that SMC had the ability to comply with relevant information requests, but did not do so out of insufficient attention to its statutory obligations. The Court thus finds that in the Remand Results, unlike in the Final Results, Commerce has adequately

articulated its conclusion that SMC failed to cooperate to the best of its ability, and has explained why the absence of this information is significant. See Branco Peres, 25 CIT at __, 173 F. Supp. 2d at 1372-73 (upholding use of AFA because Commerce found that respondent possessed necessary sales and cost data at outset of review, but failed to retain such data despite notice that it might be required); Pacific Giant, Inc. v. United States of America, 26 CIT __, __, 223 F. Supp. 2d 1336, 1343 (2002) (upholding Commerce's use of AFA where respondent and its supplier were unable to "demonstrate how they calculated any of the ten factors of production" reported to Commerce, as such behavior indicated a "reckless disregard of compliance standards that warrants adverse treatment"); Reiner Brach, 26 CIT at __, 206 F. Supp. 2d at 1337-38.

### 3.   Selection of the dumping margin

In the Remand Results, Commerce stated that it complied with the Court's instruction to calculate separate dumping margins for FMEC and SMC, and then proceeded to impose duty rates identical to those applicable to the PRC entity. The Court recognizes that it is not uncommon for Commerce to assign uncooperative respondents the highest margin assigned to any respondent in an antidumping review. Because neither FMEC or SMC object to the margin selected, there is no need to consider whether the margin is unduly punitive.

## II.  Conclusion

For all the foregoing reasons, the Court sustains Commerce's Remand Results.  A separate order will be entered accordingly.

_____
Senior Judge Richard W. Goldberg


Date:    July 28, 2003
         New York, New York