Slip Op. 04 - 36

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - x
ELKEM METALS COMPANY and GLOBE METAL-
LURGICAL INC.,                             :

                              Plaintiffs, :

            v.                            :

UNITED STATES,                            : Consolidated
                                            Court No. 01-00098
                              Defendant,  :

            -and-                         :

COMPANHIA BRASILEIRA CARBURETO DE         :
CÁLCIO,
                                          :
                  Intervenor-Defendant.
- - - - - - - - - - - - - - - - - - - - x

<u>Memorandum & Order</u>

[Upon motion for relief from results of
 antidumping-duty administrative review,
 remand to International Trade Administration.]

Decided:  April 15, 2004

Verner, Liipfert, Bernhard, McPherson and Hand, Chartered
(William D. Kramer, Jessie Marie Brooks and Virginia C. Dailey) for
the plaintiffs.[1]

Peter D. Keisler, Assistant Attorney General; David M. Cohen,
Director, Commercial Litigation Branch, Civil Division, U.S. De-
partment of Justice (Reginald T. Blades, Jr.); and Office of Chief
Counsel for Import Administration, U.S. Department of Commerce
(John F. Koeppen), of counsel, for the defendant.

Dorsey & Whitney LLP (Philippe M. Bruno and Rosa S. Jeong) for
the intervenor-defendant[2] and Eletrosilex S/A.

_____

[1] Samuel J. Waldon and Matthew T. West of Baker Botts LLP,
counsel for Elkem Metals Company and Globe Metallurgical Inc. in
CIT No. 01-00082, which has been consolidated herein, have filed
papers in opposition to the motion of Eletrosilex S/A for judgment
on the agency record.

[2] Subsequent to the service of his motion papers herein,
Philippe M. Bruno filed a notice of substitution of attorneys for
this party by Greenberg Traurig, LLP.

AQUILINO, Judge:   This case commenced pursuant to 19
U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii) and 28 U.S.C. §§
1581(c) and 2631(c) consolidates complaints filed by Companhia
Brasileira Carbureto de Cálcio ("CBCC") and Eletrosilex S/A, CIT
No. 01-00082, and by Elkem Metals Company and Globe Metallurgical
Inc., CIT No. 01-00098, each praying for relief from Silicon Metal
From Brazil; Final Results of Antidumping Duty Administrative Re-
view and Determination Not To Revoke in Part, 66 Fed.Reg. 11,256
(Feb. 23, 2001), promulgated by the International Trade Administra-
tion, U.S. Department of Commerce ("ITA").[3]   In pertinent part,
those Final Results were weighted average antidumping-duty margins
of 0.63 percent for CBCC and 93.20 percent for Eletrosilex.  See 66
Fed.Reg. at 11,257.   The former led to the following reported
rationale:

> After review of the record, the Department deter-
> mines that although CBCC has had zero or *de minimis*
> dumping margins for the previous two review periods,
> during the current review CBCC's weight-averaged dumping
> margin is determined to be 0.63 percent, above the *de
> minimis* rate . . . 0.50 percent . . .. Consequently,
> CBCC has not made sales of subject merchandise "at not
> less than NV for a period of at least three consecutive
> years" as required by the Department's regulations.
> Because one of the requirements to qualify for revocation
> has not been met, . . . we determine not to revoke this
> order with respect to CBCC.

---

[3] The above-encaptioned plaintiffs ("Elkem & Globe") were
granted leave to intervene as parties defendant in the first
matter, from which resultant adverse posture they interposed a
motion to dismiss Eletrosilex as a party with any actionable claim,
alleging lack of standing.  That motion has been denied per the
court's slip opinion 02-34, 26 CIT ___, 196 F.Supp.2d 1367 (2002),
familiarity with which is presumed.

Id. at 11,256-57.  The notice of the Final Results adopts the

ITA's Issues and Decision Memorandum for discussion of the points

pressed by the parties, including Eletrosilex.  See id. at 11,256.

That memorandum explains the margin for this exporter, in part, as

follows:

> Eletrosilex, an experienced participant in the antidumping proceedings since the 1991-1992 POR[] was on notice as provided by the Department's past practice that if it failed to act to the best of its ability, and the Department applied adverse FA, the rate selected could very well be the highest calculated rate in the proceeding, i.e., the 93.20 percent rate obtained in the LTFV investigation.  In determining the FA rate here, the Department considered the fact that, in the 1993-1994 and 1994-1995 PORs, [it] calculated dumping margins of 61.58 percent for CBCC and 81.61 percent for RIMA, respectively, while at the same time, calculating zero or single digit rates for other respondents, demonstrating that in this particular market, some companies may continue to dump at substantial margins while others have eliminated or substantially lowered their margins.  The fact that these disparate rates have continued throughout the reviews since the original LTFV investigation, combined with [] Eletrosilex's failure to respond to the request for information, supports our conclusion that the 93.20 percent rate from the investigation remains reasonable and relevant.  The Department's determination here is in accordance with [it]s policy of selecting the highest calculated rate in the entire proceeding in order to induce future cooperation of a respondent.[4]

I

The plaintiffs Elkem & Globe have interposed a motion for

judgment upon the ITA record pursuant to USCIT Rule 56.2.  The sole

---

[4] Appendix 8 to Brief in Opposition to Plaintiff Eletrosilex's Motion for Judgment Upon the Agency Record, p. 15.  The references "POR", "FA", "LTFV", and "RIMA" are abbreviations for "period of review", "facts available", "less than fair value", and for the respondent "Rima Industrial S.A.", respectively.

thrust of the motion is that the agency failed to fulfill its statutory obligation of calculating the cost of production ("COP") and constructed value ("CV") based on the actual costs incurred by the producer or exporter under investigation, which failure, according to them, has given rise to the issue of

> whether the Department erred in calculating the financial expenses included in COP and CV for CBCC, the producer and exporter of the subject merchandise, based on the financial statements of its indirect Belgian parent, Solvay & Cie, when the actual financial costs incurred by CBCC greatly exceeded the financial costs calculated by the Department.

Plaintiffs' Brief, p. 2.

The defendant and CBCC each accept this as the issue between them and the plaintiffs for resolution. See Defendant's Memorandum, p. 2; Defendant-Intervenor's Brief in Opposition, p. 1. And each defends the ITA's approach on the basis of existing agency practice and case law. Their papers, understandably, cite and discuss the litigation sub nom. American Silicon Technologies v. United States, CIT No. 97-02-00267, one of a series of suits contesting the final results of ITA administrative reviews of the same antidumping-duty order. The action bearing that CIT docket number entails judicial review of the ITA's reliance, in re CBCC, on the consolidated financial statements of Solvay & Cie of Belgium, not Brazil. See, e.g., American Silicon Technologies v. United States, 23 CIT 237, 244-45 (1999). That opinion rejected as

without merit the agency's claimed established practice of using

such consolidated statements of a respondent's parent corporation,

rather than those of the respondent itself, whenever the record

establishes, *prima facie*, parental corporate control.  The court

also was unable to find the requisite substantial evidence on the

record in support of that approach, whereupon it remanded

> the calculation of CBCC's financial expenses with the
> instruction that Commerce base those expenses upon the
> consolidated financial statements of CBCC and its im-
> mediate parent Solvay do Brasil.

Id. at 245.  The ITA complied with the court's order, and the

results of the remand on that issue were affirmed.  See American

Silicon Technologies v. United States, 25 CIT ___, ___, Slip Op.

01-109, pp. 3-6 (Aug. 27, 2001).

By the time of that affirmance, the actions comprising

this consolidated case had commenced, and, a few months later,

CBCC, a party to those prior proceedings, noticed a timely appeal

from that affirmance that has resulted in the following decision,

to quote from it in part:

> . . . [T]he trial court . . . remand . . . limited
> Commerce's examination to CBCC's transactions with
> Brasil.  This order prevented Commerce from further
> assessing the relationship between Brasil and Solvay or
> CBCC and Solvay.  This limit on the remand methodology
> further inhibited Commerce's ability to ensure an
> accurate assessment of CBCC's financial costs.  As
> Commerce notes on appeal, during the remand proceedings,
> Commerce gathered more information about the relationship
> between CBCC and Brasil, but not with regard to the
> relationship between CBCC or Brasil and Solvay.  Thus,

the record in the remand is deficient because Commerce could not compare the consolidated statements of Solvay with the consolidated statements of Brasil. By sharply limiting Commerce's inquiry, the trial court's remand actually prevented Commerce from undertaking a fully balanced examination that might have produced more accurate results.

Therefore, this court reverses and remands with instructions to require Commerce to carry out its statutory duty of accurately assessing "general costs" . . ..

American Silicon Technologies v. United States, 334 F.3d 1033, 1038-39 (Fed.Cir. 2003).

While the facts underlying that contested ITA administrative review are still *sub judice*[5], the issue posited above by the plaintiffs Elkem & Globe in this case has been resolved as a matter of law by the court of appeals adversely to their position, *viz.*:

As a legal matter, the Court of International Trade had an obligation to defer to Commerce's reasonable methodology in the first place, but no such deference was afforded. Thus, according proper deference, Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570, 1575 (Fed.Cir. 1994), this court sustains as reasonable Commerce's well established practice of basing interest expenses and income on fully consolidated financial statements.

Id. at 1038. Hence, plaintiffs' motion for judgment upon the agency record must be, and it hereby is, denied.

---

[5] This court notes in passing that, pursuant to the order of remand, American Silicon Technologies v. United States, 27 CIT ____, Slip Op. 03-109 (Aug. 25, 2003), the ITA has filed its determination of 0.37 percent as the weighted-average margin for CBCC for the particular period of review at issue. See Silicon Metal from Brazil: Final Results of Redetermination Pursuant to Court Remand, p. 6 (Dec. 15, 2003).

II

The motion of CBCC and Eletrosilex for such a judgment on their behalf propounds the following issues for the court's adjudication:

> 1. Whether . . . Commerce's selection of the surrogate interest rate to calculate CBCC's imputed credit expense was supported by substantial evidence on the record and otherwise in accordance with law.
>
> 2. Whether . . . Commerce's rejection of the interest rate based on CBCC's borrowing experience was supported by substantial evidence on the record and otherwise in accordance with law.
>
> 3. Whether the Department's use of adverse inference in applying total fact[s] available to Eletrosilex was supported by substantial evidence on the record and otherwise in accordance with law.
>
> 4. Whether the Department properly corroborated the total facts available applied to Eletrosilex as total facts available, in accordance with law.

A

On its part, the defendant would compress the first two of these enumerated issues into one, namely, whether the ITA properly calculated CBCC's home-market imputed credit expense based upon an established Brazilian commercial reference rate rather than a higher rate based upon a CBCC loan that was due after only several days.  Defendant's Memorandum, p. 3.  This formulation apparently has been derived from that part of the controlling Decision Memorandum that sets forth the ITA's determination to use Brazil's *Taxa Referencial ("TR")* rate to calculate CBCC's imputed

home-market credit costs.[6]  Be that as it may, defendant's counsel eschew any defense now on this issue, requesting instead a remand to the ITA for reconsideration and to give this determination "full and fair consideration under the applicable law."  Id. at 2.

CBCC welcomes this request, while the plaintiffs take the position that the *TR* is an appropriate surrogate rate for calculating Brazilian home-market credit expenses when a respondent does not have short-term borrowings during the period under review.  See Plaintiffs' Brief in Opposition to Defendant-Intervenor's Motion for Judgment *passim*.

Having perused and carefully considered that entire brief, the court nonetheless concludes that defendant's remand request should be granted, in part in the light of the ITA's Silicon Metal from Brazil; Final Results of Antidumping Duty Administrative Review, 67 Fed.Reg. 6,488 (Feb. 12, 2002), which was published just prior to that and the other briefs at bar and in which the accompanying Issues and Decision Memorandum found that the *TR* is "the index for savings accounts" and therefore concluded that it was "not reasonable to use the TR rate as a surrogate interest rate for short-term commercial borrowings". A-351-806, ARP 7/1/99-6/30/00 (Feb. 12, 2002) (Comment 1), available at http://ia.ita.doc.gov/frn/summary/2002feb.htm.

---

[6]  See Appendix 8 to Brief in Opposition to Plaintiff Eletrosilex's Motion for Judgment Upon the Agency Record, p. 19.

B

Given the protracted and continuing administrative and
judicial proceedings centered on the ITA's antidumping-duty order
governing imports into the United States of silicon metal from
Brazil and its administrative reviews thereof, the adverse infer-
ences spelled out by Congress in 19 U.S.C. §1677e(b) and drawn by
the agency and the courts upon failure to provide information
within the meaning of section 1677e(a) surely have been, and
continue to be, well-understood by all the parties there- and here-
to.  Indeed, experienced counsel do not claim otherwise.

All that is claimed by the government herein is that
"Eletrosilex chose not to respond to the Department's  . . . sup-
plemental questionnaire".[7]  However, as discussed in Mannesmann-
rohren-Werke AG v. United States, 23 CIT 826, 842, 77 F.Supp.2d
1302, 1316 (1999), for example,

> failing to respond does not have to be read negatively.
> A respondent can fail to respond because it was not able
> to obtain the requested information, did not properly
> understand the question asked, or simply overlooked a
> particular request. Thus, without further explanation by
> Commerce, the Court will not infer that a respondent's
> failure to respond constitutes substantial evidence that
> it failed to cooperate to the best of its ability.

That is, the agency must "articulate why it concluded that a party
failed to act to the best of its ability, and explain why the
absence of th[at] information is of significance to the progress of

---

[7] Id. at 12 (emphasis added).  See Defendant's Memorandum, p.
36.

its investigation".  23 CIT at 839, 77 F.Supp.2d at 1313-14.  <u>See</u>
<u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1382-83 (Fed.
Cir. 2003).

Upon reading the ITA's reported reasoning[8] and reviewing
the record filed herein, such as it is, the court cannot concur
that the supplemental information requested was "critical"[9].  To be
sure, the agency's responsibility of prescribing mathematical mar-
gins of dumping is always a most daunting task.  But, as indicated,
this consolidated case is not proceeding on an empty slate.  For
example, in <u>American Silicon Technologies v. United States</u>, 24 CIT
612, 624, 110 F.Supp.2d 992, 1002 (2000), both the ITA and the
court seemingly recognized "Eletrosilex's history of compliance".
<u>See</u>, <u>e</u>.<u>g</u>., <u>Silicon Metal From Brazil:  Preliminary Results of Anti-</u>
<u>dumping Duty Administrative Review</u>, 63 Fed.Reg.  42,001, 42,007
(Aug. 6, 1998):

> . . . In the past, Eletrosilex has demonstrated an
> understanding for requests of additional information by
> the Department.

In fact, that history led the court to opine that it actually
supports the claim that Eletrosilex was unable to respond to the
no-less-than-three supplemental agency requests for information at
issue.  <u>See</u> 24 CIT at 624, 110 F.Supp.2d at 1002.  That is,

> it does not follow that simply because Eletrosilex was
> able to respond to prior questionnaires it was able to

---

[8] <u>See</u> <u>supra</u>, note 6, pp. 11-15.

[9] <u>Id</u>. at 13.

respond to the . . . questionnaires at issue here . . . when viewed in light of Eletrosilex's notification to Commerce that "it is undergoing top to bottom management reviews, and because of changes in staffing, it is *not able* to respond in a timely manner".[10]

In sum, the court concluded:

> Commerce has not made the necessary finding that Eletrosilex failed to respond *to the best of its ability*. After reviewing Commerce's reasoning, the Court concludes that the primary basis for its determination was the mere fact that Eletrosilex failed to respond to the two supplemental questionnaires. As previously noted in *Borden*[, Inc. v. United States, 22 CIT 233, 4 F.Supp.2d 1221 (1998),] and *Mannesmannrohren-Werke, supra*, this is only a recitation of the standard for the application of facts available under 19 U.S.C. § 1677e(a)(2)(B) and is inadequate justification for making an adverse inference pursuant to 19 U.S.C. § 1677e(b). Accordingly, the Court remands this issue for reconsideration and instructs Commerce to reopen the administrative record and collect additional evidence concerning Eletrosilex's claimed inability to respond to the supplemental questionnaires.

24 CIT at 625, 110 F.Supp.2d at 1003 (emphasis in original).

After this remand (and commencement of this consolidated case), the court was able to find substantial evidence developed on the record in support of the ITA's approach:

---

[10] 24 CIT at 624, 110 F.Supp.2d at 1002 (emphasis in original). The excuses proffered by Eletrosilex herein are not dissimilar. See, e.g., Brief in Support of [CBCC & Eletrosilex] Plaintiffs' Rule 56.2 Motion, p. 31.

On their part, the gist of Elkem & Globe's motion to dismiss Eletrosilex from this consolidated case for lack of standing was that it

> no longer manufactures, produces or exports silicon metal. Thus, pursuant to the plain language of . . . 19 U.S.C. § 1516a . . ., Eletrosilex is not an interested party and cannot participate in this appeal, as a matter of law.

> . . . [T]he reason Eletrosilex could not answer Commerce's supplemental questionnaires was because it dedicated the personnel capable of answering those questions to preparing information requested by Eletrosilex's potential purchaser. . . . The record shows that Eletrosilex decided to suspend certain operations, including participation in antidumping proceedings, during the period in question in order to curtail costs in anticipation of the sale of the company. . . . While Eletrosilex was facing bankruptcy during the period in question, the fact remains that it allocated its resources toward satisfying the requests of the prospective purchaser rather than Commerce.

American Silicon Technologies v. United States, 26 CIT ___, ___, 240 F.Supp.2d 1306, 1311 (2002).

C

Given this overlap of cases and related claims, the question arises as to whether or not this court can assume similar results of any remand on the issue of Eletrosilex's ability to have provided the requested supplemental information to the ITA. Presuming it can, the related question remains whether the 93.20 percent margin sought to be imposed is "relevant, and not outdated, or lacking a rational relationship". Ferro Union, Inc. v. United States, 23 CIT 178, 205, 44 F.Supp.2d 1310, 1335 (1999). Stated another way, an adverse-facts-available rate should be "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed.Cir. 2000). Accord: Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1340 (Fed.Cir. 2002).

The court's slip opinion 02-123 in American Silicon Technologies points out that the actual margins calculated for Eletrosilex in other ITA administrative reviews fluctuated between 18.87 and 51.84 percent. Also, the

> highest calculated rates for the first through fifth administrative reviews were 53.63 percent, 51.84 percent, 61.58 percent, 67.93 percent, and 39.00 percent respectively. . . . The Court also finds it significant that the period of review in question began six years after the Less Than Fair Value Investigation in which the 93.20 percent margin was calculated. This fact along with the fact that this margin is 25.27 percent higher than the highest margin calculated based on actual information in the intervening administrative reviews (*i.e.* the 67.93 percent margin calculated in the fourth administrative review) leads the Court to conclude that the 93.20 percent margin is inconsistent with actual commercial practices at and around the time in question . . . [and] is so far removed from being "a reasonably accurate estimate of the respondent's actual rate" that it is disproportionately punitive in nature.[11]

Whereupon that matter was remanded a second time to the ITA, which thereafter duly reported a revised rate of 67.93 percent that has been affirmed by the court, American Silicon Technologies v. United States, 27 CIT ___, 273 F.Supp.2d 1342 (2003).

### III

While the court in that case has since stayed the judgment of affirmance therein

---

[11] 26 CIT at ___, 240 F.Supp.2d at 1213-14. Cf. Reply of Plaintiffs [CBCC & Eletrosilex] in Support of Their Motion for Judgment Upon the Agency Record, pp. 6-8.

pending the final determination of the dumping margins in the fourth administrative review of the antidumping duty order on silicon metal from Brazil, *sub nom. American Silicon Technologies v. United States*, Consolidated Court No. 97-02-00267[,[12]]

this court hereby grants the USCIT Rule 56.2 motion of CBCC and Eletrosilex[13] to the extent of remand now to the defendant of this consolidated case to impute anew (1) CBCC's home-market credit costs and (2) Eletrosilex's margin of dumping for the period of review implicated that is in accordance with law and supported by substantial evidence on the record.

Should this remand at this time not be in the interests of advancement of all of the existing, related Brazilian silicon metal matters to final resolution, the parties to this particular consolidated case may confer and propose to this court a mutually-more-desirable schedule.  Otherwise, the defendant may have 45 days herefrom within which to carry out this remand and to report the results thereof to the court and the other parties, which may then comment thereon within 30 days of receipt thereof.

So ordered.

Decided:  New York, New York
          April 15, 2004

                                        Thomas J. Aquilino, Jr.
                                                 Judge

---

[12] American Silicon Technologies v. United States, 27 CIT ___, ___, Slip Op. 03-144, p. 2 (Oct. 30, 2003).

[13] The quality of the papers filed in support of and opposition to this motion and the motion of the plaintiffs obviated any need to grant their joint motion for oral argument.